COUNTY OF BROOME, Appellant, v AETNA CASUALTY & SURETY COMPANY et al., Respondents.

Third Department, May 4, 1989

## APPEARANCES OF COUNSEL

*John E. Murray, County Attorney (Mary A. Walsh* of counsel), for appellant.

*MacKenzie, Smith, Lewis, Michell & Hughes (Steven T. Helmer, Charlene E. McGraw* and *Anthony R. Hanley* of counsel), for Aetna Casualty & Surety Company, respondent.

*Mudge, Rose, Guthrie, Alexander & Ferdon (Paul R. Koepff, John L. Altieri, Jr.,* and *Barbara E. Taylor* of counsel), for Insurance Company of North America, respondent.

*Smith, Sovik, Kendrick, Schwarzer & Sugnet, P. C. (James A. O'Shea* of counsel), for Insurance Company of the State of Pennsylvania and others, respondents.

*Siff, Rosen & Parker, P. C. (Ignatius J. Melito* and *Amy Gallent* of counsel), and *Twining, Nemia, Hill & Steflik, (Richard M. Hill* of counsel), for First State Underwriters Agency of New England Reinsurance Corporation, respondent.

*Hancock. & Estabrook (Alan J. Pierce* of counsel), for National Union Fire Insurance Company of Pittsburgh, Pennsylvania, respondent.

*Carter, Conboy, Bardell, Case, Blackmore & Napierski (Dianne Bresee Mayberger* of counsel), for Insurance Environmental Litigation Association, *amicus curiae.*

*Whiteman, Osterman & Hanna (Philip H. Gitlin* of counsel), for CIBA-GEIGY Corporation and others, *amicus curiae.*

## OPINION OF THE COURT

KANE, J.

Plaintiff commenced this declaratory judgment action against defendants based on their failure to defend or indemnify plaintiff in a Federal court action instituted against it by residents in the area nearby one of plaintiff's landfills, as well as in a subsequent State administrative proceeding. Both the Federal action and the State proceeding concerned plaintiff's operation of the landfill. Plaintiff had operated the landfill from 1970 until November 1984 when it was closed. The complaint in the Federal action alleged, *inter alia,* that the dumping of chemical and industrial wastes at the landfill during the 1970s had contaminated the soils and groundwater in the surrounding area resulting in personal injuries and property damages. The administrative proceeding, which was commenced by the State Department of Environmental Conservation (hereinafter DEC), claimed that the landfill was an inactive hazardous waste site which necessitated cleanup.

Plaintiff notified defendants of both matters. Defendants had all insured plaintiff at various times between 1970 and 1984. Defendants Aetna Casualty & Surety Company and National Union Fire Insurance Company of Pittsburgh, Pennsylvania, were primary insurance carriers while the remaining defendants were excess umbrella carriers. None provided plaintiff with a defense to either the Federal action or the DEC proceeding. After commencing this action, plaintiff moved for partial summary judgment claiming, *inter alia,* that defendants had breached their duty to defend and indemnify plaintiff. In opposing the motion, defendants argued that the alleged discharge of pollutants was not an "occurrence" within the meaning of the insurance policies, that the "pollution exclusion" clause of the policies excluded coverage and that the DEC proceeding was not a "suit" seeking "damages" as those terms were defined by the policies.

In denying plaintiff's motion, Supreme Court determined, *inter alia,* that with respect to the Federal action, there were issues of fact present as to whether there had been an "occur-

rence". As to the DEC proceeding, the court ruled that defendants had no duty to defend since the proceeding was not a suit seeking damages. Plaintiff has appealed.

■ We turn first to the question of whether defendants had a duty to defend or indemnify plaintiff in the Federal action. The insurance policies in question define an "occurrence" as: "an accident, including continual or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured."[1] Plaintiff claims that it was not demonstrated that the consequences of the dumping were neither expected nor intended. Supreme Court determined that this question involved issues of fact necessitating a trial. We disagree and in so doing rule that there was no "occurrence" and therefore none of the defendants owed any duty to defend or indemnify plaintiff in the Federal action.[2]

It is true that whenever a complaint alleges facts and circumstances which would, if proven, fall within the risk covered by the policy, an insurer is obligated to provide a defense to the insured (see, Niagara County v Utica Mut. Ins. Co., 80 AD2d 415, 420, lv dismissed 54 NY2d 608, 831). Here, however, the complaint fails to allege any facts which support plaintiff's contention that the consequences of its dumping were not expected or intended. Although the complaint in the Federal action charges plaintiff with permitting the discharge of wastes from the landfill in a "negligent and careless manner", it alleges that plaintiff "knew, or should have known, that the manner in which these industrial wastes * * * were disposed of * * * would result in their release into the environment". It also alleges that the discharges occurred over a lengthy period of time, from 1970 until the site's closure in 1984. Given the factual allegations in the complaint, it cannot be said that it alleges that the consequences of plaintiff's pollution were not intended or expected.

We also point out that it has been stated that personal injuries or property damages are expected if the actor knew or should have known there was a substantial probability that a certain result would take place (Auto-Owners Ins. Co. v Jensen,

1. All of the policies' definitions of an occurrence were, with some minor variations, essentially the same.

2. We note that while defendants did not appeal Supreme Court's decision, nor did they separately move for summary judgment, we nevertheless award them summary judgment as authorized by CPLR 3212 (b).

667 F2d 714, 719-720). Plaintiff claims that it only permitted the dumping of wastes and that it was therefore at most only negligent in allowing pollution to develop. Thus, plaintiff argues that it did not intend or expect the pollution. We reject this argument. The record indicates that plaintiff was aware of the problems at the landfill. As early as 1969, the State Health Department had conducted inspections of the landfill and consistently found leachate and pollution problems, both onsite and offsite. During early 1973, further inspections revealed leachate and pollution problems again both at the landfill and surrounding areas. Also in 1973, the Broome County Health Department indicated that remedial action was required to prevent contamination of water courses. There was also a letter in 1973 wherein the County Attorney advised plaintiff that the reports from the County Health Department should not be given to the State since such information could be used to close the landfill. Plaintiff was, therefore, aware of the pollution and leachate problems and yet continued to permit dumping at the landfill. Therefore, there was no "occurrence" within the meaning of the policies (see also, American Motorists Ins. Co. v General Host Corp., 667 F Supp 1423 [no "occurrence" where insured aware for years that pollution from its salt plant was taking place]; American Mut. Liab. Ins. Co. v Neville Chem. Co., 650 F Supp 929 [no "occurrence" where chemical manufacturer dumped waste into an area on its property despite knowledge that this violated State laws]).

▪ Even if we were to accept that there were questions of fact as to whether there was an "occurrence", we would still find no duty to defend or indemnify on defendants' parts based on the pollution exclusion clauses within the policies. Under these clauses, no insurance is provided for: "bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors * * * waste materials or other irritants, contaminants or pollutants into or upon land * * * but this exclusion does not apply if such discharge, dispersal, release or escape is *sudden and accidental*" (emphasis supplied).[3] As this court recently noted, the phrase "sudden and accidental" should be construed "in its entirety, without undue reliance upon discrete definitions of the two operative words" and rather than construing it in the abstract, it should be interpreted "in the context of the facts of each particular

---

3. The language of the pollution exclusion clauses in each of the policies is essentially the same with only minor variations.

case" *(Colonie Motors v Hartford Acc. & Indem. Co.,* 145 AD2d 180, 182). Here, for the same reasons as we find no "occurrence", we also find that the alleged seepage of waste from the landfill was not "sudden and accidental". In *Technicon Elecs. Corp. v American Home Assur. Co.* (141 AD2d 124), the Second Department defined the phrase to mean an event "which is unexpected, unintended and occurs over a short period of time" *(supra,* at 137). However, in *Colonie Motors v Hartford Acc. & Indem. Co. (supra),* we determined that a leak in an oil storage unit was "sudden and accidental" even though it had occurred over a period of time. Nevertheless, that determination is of no aid to plaintiff here because in *Colonie,* we pointed out that the insured was not aware of the discharge and that inspections would not have revealed the unit's defect. In contrast, in this case the dumping continued for a substantial period of time with plaintiff's knowledge of its leaking into surrounding areas *(cf., Allstate Ins. Co. v Klock Oil Co.,* 73 AD2d 486; *Farm Family Mut. Ins. Co. v Bagley,* 64 AD2d 1014). As noted previously, plaintiff was aware of the dangers of the dumping and permitted it to continue. Nor do we agree with plaintiff's assertion that *Technicon Elecs. Corp. v American Home Assur. Co. (supra)* can be distinguished because the insured there had admitted that it had intentionally released toxic material into a creek. Here, the evidence is clear that plaintiff was well aware of the leakage problems and yet continued to permit the dumping. As the court noted in *Technicon,* the relevant factor is whether the toxic material was discharged into the environment unexpectedly and unintentionally or knowingly and intelligently *(supra,* at 144).

To conclude, the complaint in the Federal action does not allege a sudden or accidental discharge but rather a longstanding period of knowing and continuous discharges. Given these allegations and the facts of this case, the discharges cannot be considered "sudden and accidental". Therefore, defendants were under no duty to defend or indemnify plaintiff in the Federal action and summary judgment on this question should be granted in their favor.

■ As to the DEC proceeding, Supreme Court determined that defendants were not required to defend or indemnify plaintiff since the proceeding was not a "suit" seeking "damages". While we agree that defendants were not obligated to defend or indemnify plaintiff in the DEC proceeding, it is not necessary to decide whether it was a suit or whether it sought damages. In our view, since the basis for the administrative

proceeding was the same as the Federal action, our decision that there was no "occurrence" and that the "pollution exclusion" clauses barred coverage applies to the DEC proceeding as well.

Given the above conclusions, it is unnecessary to address the remaining issues raised by plaintiff.

MAHONEY, P. J., MIKOLL, YESAWICH, JR., and HARVEY, JJ., concur.

Order modified, on the law, without costs, by granting defendants summary judgment and declaring that they had no duty to defend or indemnify plaintiff in connection with the action entitled *Hills v County of Broome* (US Dist Ct, ND NY, CIV 84-CV-1033) or in connection with the proceeding before the State Department of Environmental Conservation, and, as so modified, affirmed.