**RYAN, KLIMEK, RYAN PARTNERSHIP, Maury A. Ryan, James Hillary Ryan and Stanley Klimek, Plaintiffs,**

v.

**ROYAL INSURANCE COMPANY OF AMERICA, a/k/a Royal Globe Insurance Company, Safeguard Insurance Company, Defendant.**

Civ. A. No. 88–0255 L.

United States District Court,
D. Rhode Island.

Jan. 24, 1990.

See also 695 F.Supp. 644.

Maury A. Ryan, Providence, R.I., Hugh N. Fryer, Fryer, Ross & Gowen, New York City, for plaintiffs.

Kenneth P. Borden, Providence, R.I., for defendant.

## MEMORANDUM AND ORDER

LAGUEUX, District Judge.

This case is presently before the Court on the motion of defendant, Royal Insur-

ance Company of America (Royal), for summary judgment. This suit raises questions concerning the duties owed to the Ryan, Klimek, Ryan (Ryan, Klimek) partnership under insurance policies issued by Royal over a number of years.

Two events underlie this case: A fire which caused damage to plaintiffs' property in 1974 and letters from the New York Department of Environmental Conservation (NYDEC) to Stanley Oliver Holtz, Inc. (SOH) in 1987 discussing the cleanup of hazardous waste at Ryan, Klimek's facility. Three issues require decision. First, whether the NYDEC contacts amounted to a "suit" which obligated Royal to defend and indemnify Ryan, Klimek. Second, whether plaintiffs have established a sufficient question of fraud or mutual mistake to authorize rescission of the insurance settlement entered into after the 1974 fire. Third, whether Royal is liable for the diminution in value of plaintiffs' real estate for its alleged wrongful termination of Ryan, Klimek's insurance policy in 1987.

### Background

Sometime prior to 1974, Maury Ryan, Stanley Klimek, and James Hillary Ryan entered into a partnership, d/b/a Ryan, Klimek, Ryan which owned industrial/commercial real estate located at 39 Commerce Drive in Rochester, New York. The three partners, were also the sole stockholders of SOH, which leased Ryan, Klimek's property for the operation of a metal finishing business. SOH contracted with its customers to do electro-plating, spray painting, metal finishing and paint stripping. In its business SOH used many chemicals including acids, cyanides, trichlorethylene (TCE), paints, and paint thinners. Stanley Klimek acted as president and general manager of SOH as well as a representative of the Ryan, Klimek partnership which owned the real estate.

At all times pertinent hereto, Royal insured Ryan, Klimek and SOH. The property coverage "insure[d] against all risks of direct physical loss to ... [the] Building." This provision included within the coverage a debris removal clause which stated:

> This policy covers expense incurred in the removal of debris of the property covered hereunder which may be occasioned by loss by a peril not otherwise excluded.

The comprehensive general liability provision of Ryan Klimek's policy read:

> The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence, and the Company shall have the right and duty to defend any *suit* against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the *suit* are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient ... (emphasis added)

On or about December 20, 1974, a fire destroyed approximately one-half of Ryan, Klimek's building. Following the fire, representatives of Royal and Ryan, Klimek met to discuss procedures and coverage amounts for reconstruction and repair. Plaintiffs were well represented at the initial meeting with Maury Ryan (an attorney), Stanley Klimek, Martin Lowenstein, comptroller and chief financial officer of SOH, an architect, and a structural engineer in attendance. Although plaintiffs had flown an independent adjuster to the meeting, they decided not to utilize the adjuster's expertise after Robert Flynn, of the General Adjustment Bureau, indicated that an independent adjuster was not needed since he could fairly represent Ryan, Klimek's, as well as Royal's, interests. Subsequent negotiations predominantly occurred between Lowenstein and Klimek for the insured and Robert Flynn and George Kerr for Royal. SOH's proof of loss included a claim in the amount of $258,477.40 for the contents of the building and loss of machinery and equipment/inventory. The list of lost materials included two drums of TCE. Plaintiffs also filed a supplemental claim in the amount of $118,732.29. None of the supplemental costs included the cost for hazardous waste cleanup. Although

Stanley Klimek knew that TCE presented a hazard to the environment and although Royal had previously handled cleanup negotiations, neither party raised the issue of potential groundwater contamination during the negotiations, and no claim for pollution cleanup costs was ever made under the insurance policy. Royal's total payments to Ryan, Klimek and SOH amounted to $474,929.00 of an available $553,000.00 of coverage for damage to the building, loss of the contents and debris removal under the policy. Following this settlement in 1975, the building was repaired, machinery and inventory was replaced and SOH resumed full operation.

On December 2, 1986, SOH filed for bankruptcy under Chapter XI. SOH's ongoing business and Ryan, Klimek's Commerce Drive real estate were placed on the market. Plaintiffs hired Lozier Architects/Engineers to perform on-site environmental pollution tests, after prospective buyers expressed concern over possible chemical contamination. Although plaintiffs had discontinued the use of TCE after the 1974 fire, the Lozier report disclosed high levels of TCE in the groundwater below the plant. Plaintiffs forwarded copies of the report to the EPA, NYDEC, and to Royal.

Following the Lozier report, plaintiffs met with and began a series of communications with the NYDEC. The communications in brief concerned Ryan, Klimek's potential responsibility for the environmental cleanup. NYDEC requested that plaintiffs submit a workplan and remedial cleanup plan. Ryan, Klimek kept Royal abreast of all NYDEC communications. On June 22, 1987, Maury Ryan wrote to Royal explaining the difficulty Ryan, Klimek was having selling the contaminated property. The letter requested that Royal investigate the pollution and provide the money necessary for Ryan, Klimek to clean the property. Seven days later, Royal issued a 10 day cancellation notice (effective July 13, 1987) of the insurance policy which had most recently been issued to Ryan Klimek and SOH. Plaintiffs were unable thereafter to obtain further insurance for the property.

Finally, as part of liquidation proceedings approved by the Bankruptcy Court, SOH, Ryan, Klimek, and SOH Acquiring, Inc. (Buyer) entered into a purchase-lease agreement for the real estate. The Buyer agreed to purchase the real estate on or before September 30, 1992, for $987,900.00. Other provisions of the agreement limited the Buyer's cleanup responsibility to $225,000.00. The estimated appraisal value of the real estate, absent the pollution, as of the date of the agreement, was $2,100,000.00.

To date, none of the parties involved have expended any sums for the cleanup of the Commerce Drive property. Further, no demands for reimbursement of cleanup costs have been made by the EPA or the NYDEC.

Plaintiffs, as a partnership and as individuals, filed this diversity suit in the United States District Court for the District of Rhode Island on April 25, 1988. The complaint and the amended complaint allege four main causes of action. First, plaintiffs contend that Royal willfully, maliciously, and in bad faith refused to defend the NYDEC's cleanup order and refused to offer to reimburse Ryan, Klimek for cleanup costs. Second, plaintiffs claim that Royal, knowing of the potential for TCE contamination, intentionally and fraudulently failed to reveal the possibility of groundwater contamination during the fire settlement negotiations. Third, plaintiffs claim that despite Royal's knowledge that chemicals were lost during the fire, neither Royal nor Ryan, Klimek believed at the time of the fire settlement negotiations that the fire had caused groundwater contamination. Fourth, Ryan, Klimek argues that Royal wrongfully cancelled its insurance coverage in 1987 and that such cancellation resulted in the sale of Ryan, Klimek's real estate for a drastically reduced price. Plaintiffs seek compensatory and punitive damages, and rescission of the 1975 fire settlement agreement.

Defendant subsequently filed a motion for summary judgment, pursuant to Federal Rules of Civil Procedure 56(c), on each of

plaintiffs' claims. After having heard oral arguments, this Court took the matter under advisement. The matter is now in order for decision.

## Discussion

### I. Rule 56, summary judgment standard.

■ The well settled standard for summary judgment analysis requires that courts examine the pleadings, affidavits, and extra-pleading material filed by both parties to determine whether any genuine issue of material fact exists. *General Office Products Corp. v. A.M. Capen's Sons, Inc.*, 780 F.2d 1077, 1078 (1st Cir.1986); *see also* Fed.R.Civ.P. 56(c). A genuine issue involves a real dispute, substantiated by evidence beyond the allegations of the complaint, which a judge or jury must resolve. *Taylor v. Hercules, Inc.*, 780 F.2d 171, 174 (1st Cir.1986); *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir.1975), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976). Any fact which could affect the outcome of the suit is deemed material. *See Finn v. Consolidated Rail Corp.*, 782 F.2d 13, 15 (1st Cir.1986). The court must look at the record in the light most favorable to the non-moving party, *Poller v. Columbia Broadcasting Sys., Inc.*, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962), and must indulge all inferences favorable to that party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam).

### II. Duty to defend and indemnify.

Royal argues that the NYDEC communications to Ryan, Klimek and SOH did not amount to a suit or order which would trigger Royal's duty to defend. Royal contends that the NYDEC merely requested Ryan, Klimek/SOH's voluntary participation with remedial cleanup plans and that as such Royal properly refused to assist. Royal further postulates that since no money has yet been spent on cleanup, any duty on its part to indemnify has yet to arise.

### A. Suit

■ This Court must first decide whether the procedures undertaken by the NYDEC in this matter constitute a "suit" within the meaning of the policy and New York insurance law. Very little New York case law applies to this specific issue. Generally, New York courts have liberally construed insurance policies and stated that any ambiguities should be resolved in favor of the insured. *See Seaboard Sur. Co. v. Gillette Co.*, 64 N.Y.2d 304, 310, 486 N.Y. S.2d 873, 876, 476 N.E.2d 272, 275 (1984); *Thomas J. Lipton, Inc. v. Liberty Mut. Ins. Co.*, 34 N.Y.2d 356, 361, 361, 357 N.Y. S.2d 705, 708, 314 N.E.2d 37, 39 (1974). When deciding whether a cause of action against an insured triggers the insurer's duty to defend against suits, the courts have compared the allegations within the complaint with the policy terms of the insurance contract. *Broome v. Aetna Casualty and Sur. Co.*, 146 A.D.2d 337, 540 N.Y.S.2d 620, 621 (1989); *Sucrest Corp. v. Fisher Governor Co.*, 83 Misc.2d 394, 371 N.Y.S.2d 927, 934 (1975). In *Seaboard, supra,* the New York Court of Appeals concluded that "[t]he duty to defend arises whenever the allegations in a complaint against the insured fall within the scope of the risks undertaken by the insurer, regardless of how false or groundless the allegations might be." 64 N.Y.2d at 310, 486 N.Y.S.2d at 876, 476 N.E.2d at 275. *Seaboard* characterized liability insurance as litigation insurance. *Id.* This well settled body of law, however, presupposes that a lawsuit was commenced by the filing of a complaint.

In this instance, no complaint or other pleading by NYDEC was ever filed in court. Therefore, defendant argues that the action taken by NYDEC did not precipitate its duty to defend. Ryan, Klimek counters with the argument that the administrative correspondence constituted a demand for action and that such is the equivalent of filing legal action. Ryan, Klimek relies extensively on *Avondale Indus., Inc. v. Travelers Indem. Co.*, 887 F.2d 1200 (2d Cir.1989), which found that a demand letter from the Louisiana State Department of Environmental Quality

(DEQ) constituted a suit. Royal focuses on *Technicon Elec. Corp. v. American Home Assurance Co.*, 141 A.D.2d 124, 533 N.Y. S.2d 91 (1988), *aff'd*, 74 N.Y.2d 66, 544 N.Y.S.2d 531, 542 N.E.2d 1048 (1989), which held that a letter from the EPA which merely notified plaintiff of its potential responsibility for waste cleanup did not constitute a suit giving rise to the duty to defend. After comparing the factual underpinnings of the above-cited cases and after a brief consideration of cases in other jurisdictions and their treatment of the word "suit", this Court agrees with Royal that the contacts between the NYDEC and Ryan, Klimek did not rise to the level of a "suit" as that word is used in the insurance policy.

*Avondale* involved an insurance policy which replicates Ryan, Klimek's policy word for word. *Avondale, supra*, 887 F.2d at 1202. There, plaintiff's business required the removal of oil and chemical waste from the holds of ships. Avondale would sell the recovered oil which was then recycled at a facility in Louisiana. *Id.* at 1201. In 1986, the Louisiana Attorney General sent Avondale a letter on behalf of the DEQ. The letter disclosed the DEQ's intention to take immediate action to cleanup the recycling facility and notified Avondale of the potential responsibility therefor. The letter made a "demand" for a remedial action plan for the site and warned that intentional disregard of the DEQ's request could lead to severe penalties. Finally, the letter required Avondale to attend a meeting or chance the initiation of a suit. *Id.* at 1202.

In deciding whether the DEQ's letter constituted a suit, the Second Circuit focused on the adversarial posture taken by the DEQ. *Id.* at 1206. The court noted that Avondale would face substantial penalties if it disregarded the DEQ's demands. *Id.* at 1201, 1206. The *Avondale* court, considering the previously decided *Technicon* case, distinguished between the coercive demand letter received by Avondale and the request to voluntarily participate in a remedial program received by Technicon. The court required Travelers to defend Avondale. *Id.*

Unlike *Avondale* which involved the formalized environmental protection procedures of Louisiana, the *Technicon* court considered the procedures filed against a company by the EPA. It held that a potentially responsible person letter sent by the EPA did not amount to a suit within the insurance policy's language. The court noted that "[t]he EPA letter at issue merely informed Technicon of its potential liability" under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), 42 U.S.C. § 9601 *et seq.* *Technicon, supra*, 141 A.D.2d 124, 533 N.Y.S.2d at 105. The court characterized the letter as an invitation to voluntary action on Technicon's part and decided that as such the letter was not the equivalent of a suit. *Id.*

In support of its finding, the *Technicon* court discussed *City of Evart v. Home Ins. Co.*, No. 103621 (Mich.App. April 10, 1989) and *Detrex Chemical Indus., Inc. v. Employers Ins. of Wausau*, 681 F.Supp. 438 (N.D.Ohio 1987). In these cases, when reviewing insurance policies substantially identical to Ryan, Klimek's policy, the courts looked to the plain and unambiguous meaning of the word "suit". *Evart* differentiated between a suit and mere allegations or claims. *Evart, supra*. In *Detrex*, the EPA sent three letters to the insured which explained that the EPA was considering spending funds to cleanup their facility. The correspondence warned Detrex that it might be liable for costs and "strongly suggested" that Detrex submit a cleanup plan of its own. *Detrex, supra*, 681 F.Supp. at 444. *Detrex*, like *Technicon*, emphasized that the EPA letter merely requested voluntary participation. *Id.* at 446. The court explained that unless the EPA resorted to an injunction or sought cleanup costs, its actions would not trigger the insurance company's duty to defend. *See id.* Other jurisdictions are in accord. *See Harter Corp. v. Home Indem. Co.*, 713 F.Supp. 231, 232–33 (W.D.Mich.1989); *Aetna Casualty & Sur. Co. v. Gulf Resources & Chem. Corp.*, 709 F.Supp. 958, 960 (D.Idaho 1989). *But see Higgins Indus. v. Fireman's Fund Ins. Co.*, No. 87–CV–

10406, slip op. at 8–9, 1989 WL 168026 (E.D.Mich. Aug. 3, 1989).

Since the highest court in New York has yet to address this "suit" issue, *Avondale* and *Technicon* merely represent what the Second Circuit and the Appellate Division guess the New York Court of Appeals will ultimately decide. Although these two courts came to opposite conclusions regarding the "suit" issue, their interpretations of New York insurance law are consistent. The decisions were ultimately decided on very different facts. Indeed *Avondale* focused on the distinction between the Louisiana and the EPA procedures. Distinguishing *Technicon*, the Second Circuit stated that a request to participate voluntarily in remedial measures is not the same as the adversarial posture assumed in the coercive demand letter Avondale received in the instant case. *Avondale, supra,* 887 F.2d at 1206.

This Court must now examine the facts in the light most favorable to the plaintiffs as the nonmoving party to determine whether the NYDEC communications rose to the level of coercive, adversarial demands. Ryan, Klimek insists that a letter from the NYDEC to SOH dated April 1, 1987, constituted a demand letter which then activated Royal's duty to defend. The letter informed SOH that the NYDEC considered the SOH facility a treatment, storage and disposal facility. The letter noted that the EPA maintained primary responsibility for the implementation of corrective measures and listed the possible remedial measures that the EPA would require. The letter did not threaten court action or penalties. Nor did it anywhere include the words "demand" or "order". This Court fails to see how this letter could possibly be interpreted as coercive or adversarial. The only possible "demand" is in the statement "S-O-H should submit to this office for approval a workplan for any further work anticipated at the site."

Upon review of the other correspondence, a NYDEC letter of April 27, 1987, cited violations of environmental regulations. These violations referred to SOH's failure to supply documentation. However, a letter of June 2, stated that "[a]lthough TSD violations were cited, the Department does not intend to pursue them, provided the facility undergoes closure in a manner approved by the Department". This final letter stated that "[i]t is not the Department's intention to cause undue hardship to the company, but to ensure that the site causes no adverse impact to public health or environment." The NYDEC correspondence concerned proposals for cleanup pursuant to SOH's closure. This is different from the correspondence in *Avondale* which indicated that the DEQ planned to take immediate action and to hold Avondale responsible. Furthermore, unlike the Louisiana laws, New York requires a notice and an opportunity for a hearing before the NYDEC has the authority to implement a cleanup order. *Cf.* La.Rev.Stat.Ann. §§ 30:2025(C), (G) (West 1989); N.Y. Environmental Conservation Law § 27–1313 (McKinney 1984). The NYDEC's correspondence requested voluntary participation before resort to the statutory procedures which could include initiation of an adversarial suit. Therefore, defendant's motion for summary judgment on the "suit" issue must be granted.

### B. Indemnification

■ This Court is at a loss to comprehend how plaintiffs can insist that Royal owes a duty to indemnify Ryan, Klimek when to date Ryan, Klimek and SOH have yet to expend any money towards a cleanup. The insurance policy provides that Royal will pay all sums that Ryan, Klimek or SOH become legally obligated to pay as damages. Royal would have a duty to indemnify for any actual cleanup costs expended. *See New York v. Amro Realty Corp.*, 697 F.Supp. 99, 102 n. 5 (N.D.N.Y. 1988); *accord Centennial Ins. Co. v. Lumbermens Mut. Casualty Co.*, 677 F.Supp. 342, 349 (E.D.Pa.1987); *Fireman's Fund Ins. Co. v. Ex–Cell–O Corp.*, 662 F.Supp. 71, 75 (E.D.Mich.1987). This duty will not arise under the policy until actual costs or damages arise. Therefore, defendant's motion for summary judgment on the "indemnification" issue must be granted.

III. Rescission due to fraud or mutual mistake.

Plaintiffs seek rescission of the 1975 insurance settlement on the basis of fraud. Plaintiffs' plan is that after rescission, plaintiffs would be able to add a claim under the debris removal clause of the policy for contamination cleanup.[1]

In support of this cause of action for rescission, plaintiffs allege that they relied to their detriment on Royal's agent, Robert Flynn, who advised them not to hire an independent adjuster to determine the extent and the types of damage caused by the fire. Plaintiffs contend that their reliance on the Royal agent resulted in the nondiscovery of the TCE contamination which nondiscovery caused plaintiffs to enter into a settlement without considering contamination. In the alternative, Ryan, Klimek argues that at the time the parties executed the settlement agreement neither plaintiffs nor Royal's agents considered whether or not the fire had caused any groundwater contamination. Plaintiffs contend that neither party realized, until the Lozier report, that the fire caused the groundwater contamination, and that because of their mutual mistake the settlement did not include cleanup costs.

A. Fraud

■ The New York common law of fraud tracks the Restatement (Second) of Contracts and requires proof of "a material, false representation, an intent to defraud thereby, and reasonable reliance on the representation, causing damage to the plaintiff." *Katara v. D.E. Jones Commodities, Inc.*, 835 F.2d 966, 970–71 (2d Cir.1987); *Van Alen v. Dominick & Dominick, Inc.*, 441 F.Supp. 389, 403 (S.D.N.Y. 1976), *aff'd,* 560 F.2d 547 (2d Cir.1977); *Howells v. Albert*, 37 Misc.2d 856, 236 N.Y. S.2d 654, 657 (1962). The concealment or non-disclosure of a material fact can also constitute fraud. *See Horwitz v. Sprague*, 440 F.Supp. 1346, 1350 (S.D.N.Y.1977). A misrepresentation which concerns a fact

likely to influence the decision-making process is material. *Sheffield Commercial Corp. v. Clemente*, 792 F.2d 282, 285 (2d Cir.1986); *United States ex rel. Roman v. Schlesinger*, 404 F.Supp. 77, 85 (E.D.N.Y. 1975). Whether alleging a misrepresentation or a failure to disclose, plaintiffs must also prove an intent to deceive. *Business Intelligence Services, Inc. v. Hudson*, 580 F.Supp. 1068, 1071 (S.D.N.Y.1984); *Howells, supra,* 37 Misc.2d 856, 236 N.Y.S.2d at 657. The intent must involve either actual knowledge of deceit or a reckless indifference to the potential for deceit. *See Idrees v. American Univ. of the Caribbean*, 546 F.Supp. 1342, 1349 (S.D.N.Y.1982).

■ Plaintiffs' contention that Royal's representation concerning an outside adjuster caused Ryan, Klimek to agree to the settlement without considering groundwater contamination fails to establish the requisite causal connection between the representation and the harm. Under New York law, Royal's agent's statement that he could fairly represent the plaintiffs in the settlement did not amount to fraud absent any indication that the agent made the representation with the intent to induce Ryan, Klimek to agree to the settlement without considering groundwater contamination. Plaintiffs do not contend that Royal made any representations regarding groundwater contamination. It does not logically follow from the expression of opinion that an outside adjuster was unnecessary that Royal intended to induce Ryan, Klimek to settle without considering TCE contamination. In short, there was no affirmative misrepresentation of a *fact* by Royal's agents regarding chemical contamination.

■ In addition, Ryan, Klimek has failed to meet the scienter requirement necessary for a rescission based on non-disclosure. It appears that plaintiffs entered into the settlement agreement without discussing contamination because of their own perceptions of what Royal should or should not have known of chemical losses. Plaintiffs

---

**1.** This would be but a Pyrrhic victory since there is less than $80,000 left in coverage under the policy.

allege that because of Royal's past experience with fire damage, plaintiffs believed that Royal's agents would have raised the contamination issue if it had been a problem. When the agents did not raise the issue, Ryan, Klimek assumed that no problem existed. Plaintiffs must set forth each element of fraud with particularity and cannot rely on the mere conclusory allegations that Royal intended to mislead Ryan, Klimek. *Horwitz, supra,* 440 F.Supp. at 1350–1351. Other than stating its own beliefs of what Royal knew, plaintiffs have failed to point to any facts from which this Court could deduce that Royal intentionally failed to disclose the possibility of TCE contamination. *See id.* at 1351. Therefore, defendant's motion for summary judgment on the "fraud" issue must be granted.

### B. Mutual Mistake

New York courts have allowed the rescission of a contract on the basis of mutual mistake where the agreement depended on a basic assumption of fact, which later proved erroneous, which the parties believed to exist at the time the contract was made. New York law follows the Restatement (Second) of Contracts § 152 (1981). *See Gerard v. Almouli,* 746 F.2d 936, 938 n. 2 (2d Cir.1984). The Restatement provides:

> Where a mistake of both parties at the time a contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances, the contract is voidable by the adversely affected party unless he bears the risk of the mistake under the rule stated in § 154.

Restatement (Second) of Contracts § 152(1). A court must focus on the basic assumptions of the parties at the time of the settlement agreement in order to evaluate whether the mistaken assumption goes to the heart of the bargain. *Id.* comment c. In *Rector of St. James Church v. City of New York,* 261 A.D. 614, 26 N.Y.S.2d 762 (1941), the Appellate Division refused to rescind a release to allow an additional claim for damages caused to a church by subway excavation after the church accept-

ed $1,000 in settlement of its claims. The court stated that "the effect of a release may not be avoided because of lack of knowledge of the true extent of injury sustained." *Id.* at 617, 26 N.Y.S.2d at 764. "[T]here must be excluded from consideration mistakes as to matters which the contracting parties had in mind as possibilities and as to the existence of which they took the risk." *Beecher v. Able,* 575 F.2d 1010, 1015 (2d Cir.1978). The Restatement distinguishes between mistakes and conscious ignorance and postulates that a party bears the risk of mistake when he or she has some knowledge of facts on which the mistake is based and treats the limited knowledge as sufficient. Restatement (Second) of Contracts § 154 (1981). Where only one party mistakenly assumes facts, courts have generally denied equitable relief. *Alden Auto Parts Warehouse, Inc. v. Dolphin Equip. Leasing Corp.,* 682 F.2d 330, 333 (2d Cir.1982). The only exception to this rule arises when the other party knew or ought to have known of the injured party's mistake. *Middle East Banking Co. v. State Street Bank Int'l,* 821 F.2d 897, 906 (2d Cir.1987).

Even when looking at the facts in a light most favorable to Ryan, Klimek, this Court cannot rescind the 1975 settlement because the undisputed facts present a case of unilateral rather than mutual mistake. There is no question that Ryan, Klimek, through Stanley Klimek, had some knowledge of the possibility of groundwater contamination after the fire. Even before the fire Stanley Klimek knew that TCE presented health problems. He knew also that 2400 to 3600 pounds of TCE had disappeared during the fire. Referring to the lost TCE he stated, "Did it go up in phosgene gas, or did it go down into the ground. I didn't know and it bothered me." (Depo. p. 74). Having some knowledge of TCE's nature and the possibility of contamination, Ryan, Klimek bore the risk of mistake when it failed to explore the whereabouts of the lost chemicals after the fire.

Ryan, Klimek settled their claim with Royal fifteen years ago. It cannot now claim ignorance and focus responsibility for

raising the possibility of groundwater contamination on Royal. The insurer did not have a duty to examine every possible loss. It is the insurance claimant who must present all possible claims to secure reimbursement.

Unless Ryan, Klimek can raise an estoppel theory, Ryan, Klimek's conscious ignorance will bar its request for rescission. To establish the elements of estoppel under New York law, Ryan, Klimek must show that it relied on a statement or conduct of Royal which caused Ryan, Klimek to change its position to its detriment. *See Special Event Entertainment v. Rockefeller Center, Inc.*, 458 F.Supp. 72, 76 (S.D.N.Y.1978). "An estoppel rests upon the word or deed of one party upon which another rightfully relies and so relying changes his position to his injury." *Posner v. United States Fidelity & Guaranty Co.*, 33 Misc.2d 653, 226 N.Y.S.2d 1011, 1017, *aff'd*, 16 A.D.2d 1013, 229 N.Y.S.2d 160 (1962). A party claiming estoppel must also show an intent to mislead or an expectation that the innocent party would rely on the representation. *See Deutsch v. Health Ins. Plan of Greater New York*, 573 F.Supp. 1433, 1440 (S.D.N.Y.1983). Equitable estoppel closely resembles the law of misrepresentation and protects an innocent party against the wrongful overreaching of the party to be estopped. *Id.* Here, Ryan, Klimek argues that it relied on Royal's misrepresentation that an independent adjuster was not needed and that such reliance resulted in harm because Ryan, Klimek settled the insurance claims without considering the possibility of groundwater contamination. This argument fails for three reasons. First, Ryan, Klimek cannot demonstrate that it relied to its detriment without forcing the Court to presume that an independent adjuster would have found TCE contamination. This presumption requires too much speculation. Second, Royal's representation, if anything, constitutes an opinion which Ryan, Klimek had the choice to accept or to reject. Third, Ryan, Klimek has not shown that Royal acted with a guilty mind or with the intent to mislead Ryan, Klimek. In the absence of a mutual mistake or a unilateral mistake with guilty knowledge on the part of Royal, this Court cannot rescind the 1975 settlement. Therefore, defendant's motion for summary judgment on the "mutual mistake" issue must be granted.

## IV. Wrongful cancellation of insurance contract.

Ryan, Klimek and Royal dispute whether Royal wrongfully cancelled Ryan, Klimek's then existing insurance policy in 1987 and, if so, what damages can flow from such cancellation. Ryan, Klimek contends that both the insurance contract and New York law required 45 days notice before cancellation and that Royal, in bad faith, violated those provisions by giving only 10 days notice. Plaintiffs argue that "[w]ithout the coverage (the 10 day early cancellation prohibited other possible coverage) and without the means to cleanup voluntarily, the plaintiffs were forced to agree to sell the property for the $980,000 finally agreed price" as opposed to "the $2.2 million fair market value without contamination." (Memo. in Opp. to Defendant's Motion for Summary Judgment p. 11). Plaintiffs also note that the Lozier report, the NYDEC letters, and Royal's refusal to cover cleanup costs contributed to the declining interest in the property and resulted in Chemical Bank seizing SOH's assets.

Royal counters with the argument that the insurance policy allowed a 10 day cancellation notice under all of the policy provisions except the liability section. It concludes that the cancellation of the fire and property coverage was, therefore, within the time required by the contract and, thus, legal. Royal asserts that it cancelled the policy not in bad faith but only after Chemical Bank seized SOH's assets and effectively closed down the business. It contends that SOH's "Material Change in Operations" posed significantly different risks than the risks insured against and that Royal was within its rights to cancel coverage. Finally, Royal posits that even assuming arguendo that the cancellation was wrongful, the cancellation was neither a

material nor a substantial factor in producing the claimed harm.

Applying the summary judgment standard, discussed *supra*, this Court determines that, although the parties disagree as to the nature of the cancellation, i.e., whether or not Royal acted properly when it cancelled the insurance policy, this dispute is immaterial to the question of Royal's liability for the decreased value of the real estate. Even assuming that Royal wrongfully cancelled the Ryan, Klimek/SOH insurance policy in 1987, no contingencies insured against ever occurred during what would have been the remaining term of the policy. It is clear beyond any doubt that the main factor in the diminution in value of Ryan, Klimek's real estate was the discovery of groundwater contamination below the plant. As a matter of law, then, the cancellation of the insurance policy did not proximately cause the decrease in value of the Commerce Drive property.

In addition, absent any showing that the parties considered the specific harm at the time of contracting, plaintiffs' claim for the difference between the actual sale price and the alleged fair market value must be denied. New York courts discuss damages in terms of "ordinary" and "special" damages. *See Starmakers Publishing Corp. v. Acme Fast Freight, Inc.*, 646 F.Supp. 780, 782 (S.D.N.Y.1986). All damages must be reasonably foreseeable but, unlike ordinary damages which naturally and obviously flow from a breach of contract, special damages will arise only when "the breaching party had notice, at the time of contracting, of the special circumstances which made such unusual damages probable in the event of a breach." *Id; see also Charles E.S. McLeod, Inc. v. R.B. Hamilton Moving and Storage*, 89 A.D.2d 863, 453 N.Y.S.2d 251, 253 (1982); J. Calamari & J. Perillo, *The Law of Contracts* § 14–5 (2d ed.1977). Losses not ordinarily contemplated at the time of contracting must proximately result from the contract breach, must have been contemplated when the parties entered into the contract, and must be capable of calculation. *Perma Research & Dev. Co. v. Singer Co.*, 402

F.Supp. 881, 898 (S.D.N.Y.1975), *aff'd*, 542 F.2d 111 (2d Cir.), *cert. denied*, 429 U.S. 987, 97 S.Ct. 507, 50 L.Ed.2d 598 (1976).

Clearly the diminution in value of Ryan, Klimek's real estate cannot be considered an ordinary consequence of the cancellation of property and liability insurance. When the parties entered into the insurance contract, they conceivably considered the possibility of chemical contamination and possible third party or government actions if Royal failed to pay for cleanup. Ryan, Klimek, however, has failed to address whether or when the parties considered all of the circumstances which led to plaintiffs' sale of the previously insured real estate at a lower than appraised value. In plaintiffs' statement of undisputed facts, they indicate that following the cancellation, plaintiffs were unable to obtain replacement insurance but that is of no consequence because the buyer of the property would have to secure its own insurance in any event. Plaintiffs admit that the SOH bankruptcy instigated the sale of the real estate and the business. Plaintiffs further admit that the prospective buyers had the upper hand in negotiating a purchase price but that had nothing to do with whether there was insurance coverage on the property. In any event, the parties could not possibly have envisioned this particular string of events when the insurance policy was issued. *See Starmakers Publishing, supra*, 646 F.Supp. at 782. Defendant's motion for summary judgment on the "cancellation" issue must be granted.

### Conclusion

For the reasons stated above, this Court grants defendant's motion for summary judgment on all the counts and claims asserted by plaintiffs in the amended complaint. The Clerk will enter judgment for the defendant forthwith.

*It is so Ordered.*