WEST AMERICAN INSURANCE
COMPANY, Plaintiff–Appellee,

v.

F.W. BAUMGARTNER d/b/a
Baumgartner Oil Company,
Defendant–Appellant.

No. 89CA1751.

Colorado Court of Appeals,
Div. II.

Dec. 20, 1990.

Rehearing Denied Jan. 24, 1991.

Certiorari Granted June 17, 1991.

Montgomery, Green, Jarvis, Kolodny & Markusson, Dennis H. Markusson, Robert W. Muilenburg, Denver, for plaintiff-appellee.

Gorsuch, Kirgis, Campbell, Walker & Grover, Robert J. Kapelke, David B. Seserman, Laura J. Nagle, Denver, for defendant-appellant.

Opinion by Chief Judge STERNBERG.

The plaintiff, West American Insurance Company, sued its insured, F.W. Baumgartner, seeking a judgment declaring that it had no duty to defend or indemnify him in certain federal court litigation. The trial court entered summary judgment for West American. Baumgartner appeals, and we affirm.

The State of Colorado brought an action against three mining companies in federal court to recover the cost of cleaning up polluted surface and ground waters under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9601, et seq. (1982). The state alleged that the mining companies had released hazardous substances into the waters through active mining operations.

The mining companies then filed a third-party complaint against Baumgartner and others, who also owned mining properties in the area, alleging that they would be liable for contribution if the state prevailed. Although Baumgartner did not engage in active mining operations, the mining companies alleged that acid mine waters from his properties contributed to the pollution.

West American insured Baumgartner's properties under a comprehensive general liability policy. When Baumgartner requested that West American provide him with a defense in the federal suit it agreed to do so, but under a reservation of rights agreement. Thereafter, West American brought a declaratory judgment action against Baumgartner, and the trial court entered summary judgment in its favor.

■ Baumgartner first contends that the trial court erred in finding that the insurance policy was not ambiguous. Specifically, he asserts that the definition of an "occurrence" in the policy conflicts with the "sudden and accidental" exception to the pollution exclusion clause. We disagree.

"Insurance contracts are to be construed according to the general rules for construction of contracts." *Marez v. Dairyland Insurance Co.*, 638 P.2d 286 (Colo.1981). The words must be given their plain and ordinary meaning. *Chacon v. American Family Mutual Insurance Co.*, 788 P.2d 748 (Colo.1990). When a policy is unambiguous we may not "rewrite it to arrive at a strained construction," *Chacon, supra,* or "force an ambiguity in order to resolve it against an insurer." *Kane v. Royal Insurance Co.*, 768 P.2d 678 (Colo.1989).

The policy at issue extended coverage to certain occurrences. The term "occurrence" was defined as:

"an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured...."

The policy also contained a "pollution exclusion" clause which provided that the following was excluded from coverage:

"bodily injury or property damage arising out of the discharge, dispersal, release or escape of ... acids, alkalis, toxic chemicals, liquids or gases ... into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental...."

Relying on *American Motorists Insurance Co. v. General Host Corp.*, 667 F.Supp. 1423 (D.Kan.1987), the trial court held the policy was not ambiguous. In *American Motorists,* after construing the same provisions as those at issue in this case, the court found that " 'occurrences,' as defined, are covered *unless* the occurrences arise out of pollution events; those are not covered *unless* such pollution events are sudden and accidental." Accordingly, the *American Motorists* court held that it:

"cannot conclude that the pollution exclusion clause is ambiguous. The language is clear and plain, something only a lawyer's ingenuity could make ambiguous. 'It strains logic to perceive ambiguity in this case.'"

We agree with this analysis. *See also Gulf Insurance Co. v. State*, 43 Colo.App. 360, 607 P.2d 1016 (1979) (policy exclusions serve to narrow the broad definition of "occurrence," but do not create ambiguity).

■ We also disagree with Baumgartner's contention that this pollution exclusion clause applies only to active, deliberate polluters. Having determined that the policy is not ambiguous, we must apply it as written. *See Chacon, supra.* This clause does not state that it applies only to persons who actively pollute. Rather, it excludes certain types of pollutants from coverage. Thus, as evidenced by the contract language, the parties intended to exclude coverage based on *what* caused the damage, not on *who* caused it.

■ Here, it was alleged that acid mine water from Baumgartner's properties contributed to the pollution by escaping into nearby waters. In our view, this falls within the language of this pollution exclusion clause and is excluded from coverage.

■ Finally, we do not agree that the "sudden and accidental" exception to pollution exclusion clause applies in this case. The mere fact that the discharge may have been accidental is insufficient to bring it within this exception. A discharge must be both sudden *and* accidental for the exception to apply. *See Waste Management of Carolinas, Inc. v. Peerless Insurance Co.*, 315 N.C. 688, 340 S.E.2d 374 (1986).

■ The word "sudden" is not defined in the policy. Therefore, it must be given its plain and ordinary meaning. *See Chacon, supra.* "Sudden" is defined as "happening without previous notice or with very brief notice." *Webster's Third New International Dictionary* 2284. Although we agree with Baumgartner's assertion that "sudden" connotes unexpectedness, we note that it also has a temporal dimension, meaning an event which happens quickly.

*See F.L. Aerospace v. Aetna Casualty & Surety Co.*, 897 F.2d 214 (6th Cir.1990); *United States Fidelity & Guaranty Co. v. Morrison Grain Co.*, 734 F.Supp. 437 (D.Kan.1990).

■ The uncontroverted evidence reveals that acid mine water had been discharged from defendant's property for many years. Baumgartner conceded in his deposition that he was aware of the existence of acid mine water on his properties and that he knew it had been flowing, and continues to flow, into the surrounding streams. Additionally, he conceded that he knew how acid water was created and understood how mine shafts and tunnels affected its movement. Under these circumstances, the discharges cannot be considered "sudden." The exception to the pollution exclusion clause does not apply.

"Under C.R.C.P. 56(c), summary judgment is proper only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Camacho v. Honda Motor Co.*, 741 P.2d 1240 (Colo.1987). "The scope and interpretation of policy language is a question of law, *Grant Investments Co. v. Fuller & Co.*, 171 Colo. 86, 464 P.2d 859 (1970), and thus may, if dispositive of a claim, justify summary judgment of dismissal." *Smartt v. National Farmers Union Property & Casualty Co.*, 43 Colo.App. 195, 605 P.2d 479 (1979). This is such a case.

In our view, the trial court correctly concluded that American West was entitled to judgment in its favor as a matter of law. There being no coverage, American West has no duty to defend or indemnify Baumgartner. *See New Hampshire Insurance Co. v. Hecla Mining Co.*, 791 P.2d 1154 (Colo.App.1989).

We have considered defendant's other arguments and find them to be without merit.

The judgment is affirmed.

NEY, J., concurs.

ROTHENBERG, J., dissents.

Judge ROTHENBERG dissenting.

I respectfully dissent.

At issue is whether plaintiff, West American Insurance Co. (insurer), is contractually obligated to defend and extend coverage to its insured, defendant F.W. Baumgartner in a federal lawsuit brought under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9601, *et seq.* (1982) (CERCLA).

Colorado law places a heavy burden on insurers that seek to rely on policy exclusions to escape the duty to defend and cover their insureds. Thus, when insurers wish to exclude coverage, they must do so in clear and specific language. *Ryder Truck Rental, Inc. v. Guaranty National Insurance Co.*, 770 P.2d 1380 (Colo.App. 1989). Further, exclusions are strictly construed against insurers since they draft the policies, and, if there is ambiguity or uncertainty as to coverage, the policies will be construed to favor the insured. *See Coxen v. Western Empire Life Insurance Co.*, 168 Colo. 444, 452 P.2d 16 (1969).

A provision in a policy is ambiguous when it is reasonably susceptible to more than one meaning. *Northern Insurance Co. of New York v. Ekstrom*, 784 P.2d 320 (Colo.1989).

Here, Baumgartner signed a comprehensive general liability policy with insurer which contains standard language covering all "occurrences." The contract defines an "occurrence" as

"an accident or a happening or event or a continuous or repeated exposure to conditions which results ... in ... property damage neither expected nor intended from the standpoint of the insured."

Baumgartner's contract also contains a standard "pollution exclusion" clause which states that the policy does *not* apply to:

"property damage arising out of the discharge, dispersal, release or escape of ... acid ... but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental...."

"Sudden" is not defined.

Relying on *American Motorists Insurance Co. v. General Host Corp.*, 667 F.Supp. 1423 (D.Kan.1987), and the cases cited therein, the trial court ruled that Baumgartner's policy provided no coverage for two reasons: (1) since Baumgartner "expected" the property damage, there was no "occurrence"; and (2) the language of the pollution exclusion clause unambiguously barred coverage.

In *American Motorists*, the court, construing identical "occurrence" and "pollution exclusion" provisions in an insurance contract, concluded that the language in the two pertinent clauses was so clear and plain that "only a lawyer's ingenuity could perceive ambiguity...." In fact, a respectable number of courts, scholars, and legal commentators throughout the country have not only perceived ambiguity, but have been confounded by the two clauses in issue here and have vehemently disagreed on their meaning. *See Broadwell Realty Services, Inc. v. Fidelity & Casualty Co.*, 218 N.J.Super. 516, 528 A.2d 76, 86 (App.Div.1987). ("Even when considered within the context of our litigious society ... the [pollution] exclusion has generated an extraordinary number of lawsuits."); and *Claussen v. Aetna Casualty & Surety Co.*, 888 F.2d 747, 749 (11th Cir.1989) ("What is the meaning of ... sudden?.... This seemingly simple question has spawned a profusion of litigation."). *See generally* Rosenkranz, *The Pollution Exclusion Clause Through The Looking Glass*, 74 Geo. L.J. 1237 (1986); and Annot., 39 A.L.R. 4th 1047 (1985).

Some courts have found ambiguity because an "occurrence," *includes* coverage for a "continuous or repeated exposure to conditions," and conflicts with the pollution exclusion clause, which *excludes* coverage unless the dispersal is "sudden and accidental." *See, e.g., City of Northglenn v. Chevron U.S.A., Inc.*, 634 F.Supp. 217 (D.Colo.1986).

Other courts have found the pollution exclusion clause ambiguous for failing to define "sudden" and "accidental." *See, e.g., Buckeye Union Insurance Co. v. Liberty Solvents & Chemicals Co.*, 17 Ohio App.3d 127, 477 N.E.2d 1227 (1984). Also,

in contrast to *American Motorists, supra,* the majority of courts throughout the country that have addressed the meaning of "sudden and accidental" have ultimately held that the phrase is ambiguous, *see Broadwell Realty Services, Inc. v. Fidelity & Casualty Co., supra,* and have determined that it means "unexpected and unintended." *See Claussen v. Aetna Casualty & Surety Co., supra; Just v. Land Reclamation, Ltd.,* 155 Wis.2d 737, 456 N.W.2d 570 (1990). Most have rejected the temporal requirement adopted here.

Still other courts have simply held the terms of the pollution exclusion clause inapplicable to the factual situation presented and, in that manner, have found that the insured was covered by the policy. *See Molton, Allen & Williams, Inc. v. St. Paul Fire & Marine Insurance Co.,* 347 So.2d 95 (Ala.1977).

Many courts, after finding the pollution exclusion clause ambiguous, have gone on to examine the parties' intent. In *Just v. Land Reclamation, Ltd., supra,* the Wisconsin Supreme Court discussed the background of the standard comprehensive general liability (CGL) policy:

"Most early CGL policies provided coverage for property damage or personal injury caused by accident.... In order to clarify the scope of coverage provided by the standard form CGL policy, and respond to policyholder demand for *expanded coverage,* the insurance industry ... revised the standard form CGL policy in 1966....

The new ... policy provided coverage for damage ... from an occurrence ... and ... *the insurance companies that drafted the revised standard form CGL policy actively promoted this policy as providing new, broadened coverage for liabilities arising from gradual pollution....* [C]ommentary on the 1966 CGL policy indicates that there was *no intent to avoid coverage for unexpected or unintended pollution."* (emphasis added)

The *Just* court also noted that the standard pollution exclusion clause was added in 1973 and:

"was designed to decrease claims for losses caused by expected or intended pollution by providing an incentive to industry to improve its manufacturing and disposal processes, and *unintentional or unexpected damages would still be covered as an occurrence under the policy."* (emphasis added)

*See also Broadwell Realty v. Fidelity & Casualty, supra; United States Fidelity & Guaranty Co. v. Specialty Coatings, Inc.,* 180 Ill.App.3d 378, 129 Ill.Dec. 306, 535 N.E.2d 1071 (1989).

In summary, the history of the pollution exclusion clause strongly suggests that it was intended to exclude only intentional polluters. *See Just, supra; Molton, Allen, supra.*

This is a unique case. Baumgartner was sued as a third party defendant for contribution by three mining companies that released hazardous substances into Colorado waters by active mining operations. *See State of Colorado v. Idarado Mining Co.,* 707 F.Supp. 1227 (D.Colo.1989), modified *in part,* 735 F.Supp. 368 (1990).

It is undisputed that Baumgartner never engaged in mining operations or any other activity that caused the release of pollutants into the mountain streams on or near his property. Rather, a naturally occurring leaching process extracted acidic compounds from Baumgartner's property by means of the natural runoff of rain and groundwater. This caused a naturally formed acidic metalliferous runoff which was neither intended nor avoidable, and which drained off Baumgartner's property into Red Mountain Creek, a tributary to the Uncompahgre River.

I am unaware of any reported case in the country in which a standard pollution exclusion clause has been construed to deny coverage to a property owner, such as Baumgartner, for pollution damage arising entirely from natural causes and not from any volitional activity by the insured. *Compare with FL Aerospace v. Aetna Casualty & Surety Co.,* 897 F.2d 214 (6th Cir.1990) (waste site); *Avondale Industries, Inc. v. Travelers Indemnity Co.,* 894 F.2d 498 (2d Cir.1990) (dumping of hazard-

ous wastes); *American Motorists Insurance Co. v. General Host Corp., supra* (careless operation by salt plant polluted aquifer under neighbors' property); *Hicks v. American Resources Insurance Co.,* 544 So.2d 952 (Ala.1989) (pit dug for strip mining filled with water and contaminated water supply with acids and toxic chemicals).

In its brief in support of its motion for summary judgment the insurer candidly admitted that:

"The facts of this case set it apart from all others in which the pollution exclusion has been an issue. Other cases have dealt with man made pollution or pollutants either released, disposed of, or escaped due to human intervention, negligence or malfeasance....

There is no established Colorado law on the exception to the pollution exclusion clause in the factual setting as presented in this case."

The trial court here also denied coverage because he concluded, as a matter of law, that Baumgartner "expected" damage to Red Mountain Creek and the Uncompahgre River. This conclusion was based on the fact that Baumgartner knew that water, in combination with the pyrite on his property, eventually creates an acidic runoff. Indeed, Baumgartner did know the geochemistry of the Red Mountain area. However, his awareness of the naturally occurring, prehistoric, phenomenon of metalliferous runoff, in my opinion, is not tantamount to evidence that Baumgartner "expected" environmental damage to occur.

The cases cited by insurer regarding "expected" damages are so factually distinguishable as to be inapposite. *See New Castle County v. Hartford Accident & Indemnity Co.,* 685 F.Supp. 1321, 1330 (D.Del.1988) (there was substantial probability that county's landfill was responsible for groundwater contamination); *Headley v. St. Paul Fire & Marine Insurance Co.,* 712 F.Supp. 745, 749 (D.S.D.1989) (drainage from sewer disposal system leaked unto adjacent property; no coverage because landowner knew of sewer problem before policy became effective); *Broome County v. Aetna Casualty & Surety Co.,* 146 A.D.2d 337, 540 N.Y.S.2d 620 (1989) (dumping of chemical and industrial waste at landfill contaminated soil and water); *City of Carter Lake v. Aetna Casualty & Surety Co.,* 604 F.2d 1052 (8th Cir.1979) (negligence of city workers caused sewer backups into basements of residents).

In *City of Carter Lake, supra,* the court notes that the majority view is that "if the damage was not intentionally caused, it was caused by accident. Whether the damage was expected is not considered." *See also Du–Wel Products v. U.S. Fire Insurance Co.,* 236 N.J.Super. 349, 565 A.2d 1113 (App.Div.1989) (rejecting an argument similar to insurer's here).

Finally, I find Baumgartner's passive act of property ownership in sharp contrast to the activity involved in *New Hampshire Insurance Co. v. Hecla Mining Co.,* 791 P.2d 1154, 1157 (Colo.App.1989) (cert. granted May 29, 1990). In *Hecla,* this court held that an active mine operator who disposed of waste materials "knew or should have known of a substantial probability that its mining activities would result in environmental damage." Here, Baumgartner engaged in no such activities.

The situation here is most analogous to that addressed in *Molton, Allen & Williams, Inc. v. St. Paul Fire & Marine Insurance Co., supra.* There, a land developer was sued by adjacent landowners for negligently causing sand and dirt to pass from developer's subdivision onto landowner's property. The developer sought indemnity from its insurer who, like Baumgartner's insurer, claimed that the pollution exclusion clause barred coverage.

The Alabama Supreme Court, describing the case as one of first impression in Alabama and perhaps the country, ruled that the pollution exclusion clause did not apply to this factual situation and, also, that the clause was ambiguous. In my view the Alabama holding represents the proper disposition of the issues presented and I would follow it here.

"It is believed that *the intent of the pollution exclusion clause was to eliminate coverage for damages arising out of pollution or contamination by in-*

**702**

*dustry-related activities.* The use of specific industry-related irritants, contaminants and pollutants seem to indicate this was the reason for the exclusion. We judicially know that during the last decade, much emphasis has been placed upon protecting the environment. The pollution exclusion was no doubt designed to decrease the risk where an insured was putting smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into the environment. *In any event, the clause here is ambiguous."* Molton, Allen, supra at 99. (emphasis added)

In summary, since there is a definite split of authority on the issue presented, and since no Colorado case is dispositive, I would adopt the reasoning of the many jurisdictions holding that the policy language in question is ambiguous. *See Just, supra.* Further, since the insurance industry's apparent purpose in drafting pollution exclusion clauses was to exclude coverage for intentional polluters, I would not permit an insurer to avoid obligations for which it received premiums unless the insured has engaged in intentional activities likely to cause environmental damage. Under that criteria the pollution exclusion clause is wholly inapplicable to Baumgartner. *See Molton, Allen, supra.* I would therefore reverse the trial court's order granting summary judgment for the insurer since, in my view, insurer has a duty to defend Baumgartner and to provide coverage to him.