**HIGGINS INDUSTRIES, INC., Plaintiff,**

v.

**FIREMAN'S FUND INSURANCE COMPANY, The American Insurance Company, Insurance Company of North America, Aetna Insurance Company, Bellefonte Underwriters Insurance Co., American Empire Surplus Lines Ins. Co., and Allianz Underwriters Insurance Co., Defendants.**

Civ. A. No. 87–CV–10406.

United States District Court,
E.D. Michigan, S.D.
Flint.

Aug. 3, 1989.

Robert G. Chaklos, Sr., Chaklos, Junger-held & Hahn, Saginaw, Mich., for Belle-fonte Underwriters.

Kirk Dillard, Lord, Bissell & Brook, Chicago, Ill., and Mark S. Demorest, Robert P. Ufer & Assoc., Bloomfield Hills, Mich., for American Empire Surplus.

Charles N. Dewey, Jr., Dilley, Dewey & Damon, Grand Rapids, Mich., Margaret J. Orbon, Clausen, Miller, Gorman, Caffrey & Witous, Chicago, Ill., and Paul R. Koepff, Mudge, Rose, Guthrie, Alexander & Ferdon, New York City, for Ins. Co. of North America and Aetna Ins. Co.

James B. Brown, Brown & Transeth, Lansing, Mich., and Paul T. Sorensen, Warner Norcross & Judd, Grand Rapids, Mich., for Higgins Industries, Inc.

Glenn F. Doyle, Smith & Brooker, Bay City, Mich., and William M. Savino, Daniel A. Bartoldus and David M. Cassidy, Rivkin, Radler, Dunne & Bayh, Uniondale, N.Y., for Fireman's Fund Ins. Co. and American Ins. Co.

## MEMORANDUM OPINION AND ORDER

NEWBLATT, District Judge.

Before the Court are the parties' cross motions for summary judgment on the issue of the insurers' duty to defend. Plaintiff's motion is GRANTED and defendants' motions are DENIED.

This is a declaratory judgment action to determine the parties' rights and obligations pursuant to various comprehensive general liability insurance contracts. Plaintiff Higgins Industries is a manufacturer of copper and brass tubing. It has used tri-and tetrachloroethene ("TCE") degreaser solvents in its manufacturing operations for about 30 years, having received a permit from the Michigan Department of Natural Resources ("MDNR") to discharge wastewater into the environment on the condition that the wastewater did not contain contaminants in excess of certain levels.

On December 20, 1985, the MDNR notified Higgins that agency inspection revealed that water in monitor wells on Higgins' property contained unacceptable levels of TCE. The MDNR ordered investigation and testing and Higgins employed Keck Consulting Services for that purpose. On April 18, 1986, Higgins notified its insurance carriers INA and Aetna of these events, pursuant to policy requirements.

On May 2, 1986, MDNR issued a Notice of Noncompliance. The Notice stated that Higgins had failed to meet the terms of the permit, ordered Higgins to cease the unpermitted discharge, and further warned that Higgins' failure to comply "will result in further enforcement action." On May 9, 1986, plaintiff notified its carriers of the MDNR demand letter.

The insurers have declined to assist Higgins in paying the costs of responding to the MDNR notice, contending here that their duty to defend the company attaches only at the commencement of a formal, traditional lawsuit. Higgins disagrees, maintaining that the MDNR's actions were the functional equivalent of a lawsuit, in light of the agency's power to require Hig-

gins to expend substantial sums to discover and eliminate the damage, or in the alternative, to inflict enforcement litigation on the company if it did not comply.

This disagreement turns on the parties' intent in framing and agreeing to the insurance contracts. Are the insurance companies correct in asserting that their intention was to charge Higgins premiums only to cover the more easily anticipated and circumscribed costs of traditional litigation, or is Higgins correct in asserting that the insurers must help shoulder the formidable costs of environmental clean-up until a factual foundation establishes whether the policies apply?

 The question has engendered sharp disagreement in the courts across the nation, between panels of the Michigan Court of Appeals as discussed below, and at the trial level in this judicial circuit as well. For the reasons stated, this Court finds for the plaintiff insured, holding that insurance companies must defend governmental claims and demands in the environmental context, irrespective of whether those claims are couched in demand letters, administrative procedures, or in formal suits, until it is factually established that the policies do not apply. Cases in accord[1] are: *Jonesville Products, Inc. v. Transamerica Insurance Group,* 156 Mich.App. 508, 402 N.W.2d 46 (1986); *United States Aviex Co. v. Travelers Insurance Co.,* 125

Mich.App. 579, 336 N.W.2d 838 (1983); *United States Fidelity & Guaranty Co. v. Thomas Solvent Co.,* 683 F.Supp. 1139 (E.D.Mich.1988); *Fireman's Fund Insurance Co. v. Ex–Cell–O Corp.,* 662 F.Supp. 71 (E.D.Mich.1987);

*Avondale Industries, Inc. v. Travelers Indemnity Co.,* 697 F.Supp. 1314 (S.D.N.Y. 1988); *New Castle County v. Hartford Accident and Indemnity Co.,* 673 F.Supp. 1359 (D.Del.1987); *Township of Gloucester v. Maryland Casualty Co.,* 668 F.Supp. 394 (D.N.J.1987); *Hazen Paper Co. v. United States Fidelity and Guaranty Co.,* No. 86–1679 (Sup.Ct.Mass.1989).[2]

The Michigan Supreme Court has not decided the issues posed in this case, so it falls to this Court to ascertain what it would do if so called. *Grantham and Mann, Inc. v. American Safety Products, Inc.,* 831 F.2d 596, 608 (6th Cir.1987). Lower state court decisions are not controlling in this instance, but a federal court must consider them as data. *Id.* at 608–09, *citing Commissioner v. Estate of Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967).

As noted, the Michigan Court of Appeals has split. As shall be explained, this Court prefers the result in *United States Aviex Co., v. Travelers Ins.,* 125 Mich.App. 579, 336 N.W.2d 838 (1983),[3] which held that covered damages may include equitable

---

1. Courts have either analyzed this issue as to the meaning of the words "suit" or "damages"; i.e., whether the duty to defend extends beyond the bounds of the traditional "suit," or whether insurance contracts require insurers to pay for investigative and remedial costs that are not "damages" in the traditional sense of money awards or settlements. Though there has been some debate as to the applicability of cases that decide one of the issues to cases deciding the other, *see, e.g., Jones v. Farm Bureau Mutual Insurance Co.,* 172 Mich.App. 24, 431 N.W.2d 242 (1988), in this Court's opinion the two issues are inextricable aspects of the same problem and the Court declines to distinguish between them. The debate, simply stated, is whether coverage should depend on either the form of the action or the nature of the relief sought. This Court finds that it should depend on neither.

2. Some cases taking the opposite view, holding that only a traditional suit triggers the duty to defend, are:

*City of Evart v. Home Insurance Co.,* No. 103621 (Mich.App. April 10, 1989); *Jones v. Farm Bureau Mutual Insurance Co.,* 172 Mich. App. 24, 431 N.W.2d 242 (1988); *Detrex Chemical Industries, Inc. v. Employers Insurance of Wausau,* 681 F.Supp. 438 (N.D.Ohio 1987) (duty to defend triggered only by formal administrative hearing; reconsidered to include an EPA remedial order); *Continental Insurance Co. v. Northwestern Pharmaceutical and Chemical Co.,* 842 F.2d 977 (8th Cir.1988); *Maryland Casualty Co. v. Armco, Inc.,* 822 F.2d 1348 (4th Cir.1987), *cert. denied,* 484 U.S. 1008, 108 S.Ct. 703, 98 L.Ed.2d 654 (1988).

3. *Aviex* analyzed the issue in terms of what constitutes covered "damages," but, as this Court has noted, the distinction between "damages" and "suits" in this context is one without a difference.

and injunctive relief as well as incurred monetary costs. The court has held similarly in *Jonesville Products, Inc. v. Transamerica Ins. Group*, 156 Mich.App. 508, 402 N.W.2d 46 (1986), in which a third party had sued Jonesville, alleging in the complaint that Jonesville's discharge of pollutants had been "continuous." On the basis of that language, Jonesville's insurer refused to defend the suit, citing a pollution exclusion in the policy much like the one in the case at bar. Jonesville sued the insurer on the duty to defend issue. The court of appeals, writing that "(i)t is the *insurer's* duty to look behind the third party's allegations to analyze whether coverage is possible", *Jonesville*, at 513, 402 N.W.2d 46 (emphasis in original), held in favor of plaintiff insured on the ground that the harm "possibly" could still have come within the ambit of coverage.

The two following cases to the contrary are not persuasive. This Court disagrees with their result for the reasons stated further *infra;* moreover, these are both *per curiam* opinions that do not do justice to the substantial nature of this controversy. *City of Evart*, No. 103621 (Mich.App. April 10, 1989), limited the events triggering insurance coverage to traditional litigation only, for the sole stated reason that the word "suit" is plain and unambiguous. *Jones v. Farm Bureau*, 172 Mich.App. 24, 431 N.W.2d 242 (1988), apparently misreading *Aviex*, held that injunctive relief could not be deemed covered "damages."

This Court has decided in favor of the *Aviex* and *Jonesville Products* result for the following additional reasons. From the plain language of the policies,[4] and in the practice of the insurance business generally, the duty to investigate the facts of a situation in which liability might result is inherent in an insurance company's contractually conferred power to decide how to handle the claim before a suit is filed: whether a defense exists and a contest would be worthwhile, or whether a straightforward settlement would be the appropriate course. Thus, insurance companies have already undertaken this duty in circumstances other than environmental.

They have undertaken the duty in the environmental context as well, despite their reluctance to admit it, by means of "pollution exclusion" clauses.[5] The clauses operate to preclude coverage if releases of an environmental contaminant occurred on a regular basis in the ordinary course of business. Pollution releases *are* covered, however, if they occurred as the result of a sudden, instantaneous, precipitous, and accidental discharge, of which the polluter had no previous warning. *U.S. Fidelity and Guaranty Co. v. Star Fire Coals, Inc.*, 856 F.2d 31 (6th Cir.1988).[6] The insurers argue that Higgins' TCE releases were caused by, among other things, its past practice of applying TCE sludge on the company's driveways to control dust. In support, the insurers point to a letter alluding to this practice from the DNR to

---

**4.** An example of the clauses at issue is taken from the American/Fireman's Fund policy, plaintiff's Exhibit M, which reads in relevant part as follows:

[T]he Company shall ... [d]efend any suit against the insured alleging ... injury to or destruction of property and seeking damages on account thereof.... [T]he Company may make such investigation, negotiation and settlement of any claim or suit as it seems expedient....

**5.** As an example, one policy reads:

It is agreed that the insurance does not apply to bodily injury or property damage arising out of the discharge [of various pollutants] ... but this exclusion does not apply if such discharge ... is sudden and accidental.

American/Fireman's Fund Policy, Plaintiff's Exhibit P.

**6.** The Sixth Circuit purportedly decided *Star Fire Coals* under Kentucky law, but cited authority from several other jurisdictions in support of its ruling that "sudden" means precipitous and instantaneous. Accordingly, *Star Fire Coals* is binding unless this Court determines that the Michigan Supreme Court would rule differently. This Court holds that it would not, for the reasons stated by Judge Feikens in *Fireman's Fund Insurance Cos. v. Ex–Cell–O Corp.*, 702 F.Supp. 1317, 1324–25 (E.D.Mich.1988), (Ex–Cell–O II). Thus, other law from other jurisdictions is of no consequence. *See, e.g., U.S. Fidelity & Guaranty Co. v. Specialty Coatings Co.*, 180 Ill.App.3d 378, 129 Ill.Dec. 306, 535 N.E.2d 1071 (1989).

Higgins on August 23, 1985, as well as to other DNR–Higgins correspondence in which other possible causes are discussed. Plaintiff's Exhibit B; Correspondence Appended to Defendants' Joint Opposition Affidavits, November 8, 1988. On the other hand, Higgins Vice President Richard Watson testified in an affidavit that there were two specific instances in which substantial spills of TCE were accidently released. Plaintiff's Exhibit A, confirmed in Keck Consulting Services' Report, Plaintiff's Exhibit J.

Thus, even with a lawsuit having been filed and discovery pursued, there are still outstanding issues of material fact rendering a decision on liability inappropriate. As here, Judge Feikens held in *Ex–Cell–O (I)*, 662 F.Supp. at 76, that if facts are in doubt, insurers may not avail themselves of a facial determination that a pollution exclusion defeats the duty to defend environmental claims. It is this Court's further point that the insurers have assumed the duty to investigate claims of environmental pollution by means of the explicit provision covering accidental releases. That being so, they should not now be heard to cry unfair surprise when the duty is imposed on them for environmental claims generally.[7]

Indeed, the defendants have painted themselves into a corner. To defeat the duty to defend, the insurers argue that they should not be required to act on Higgins' behalf until a formal suit were to be lodged against it. To justify that position, the insurers urge that the policies at issue do not apply to the facts of this case. To establish these facts, the defendants use evidence that they have obtained by discovery, *after* plaintiff has instigated this suit against them. The defendants thereby demonstrate that the very investigation they oppose is required.

The Court is further in accord with Judge Feikens, who noted in *Ex–Cell–O (I)*, 662 F.Supp. at 75, that "coverage [should]

not hinge on the form of action taken or the nature of relief sought, but on an actual or threatened use of legal process to coerce payment or conduct by a policyholder." The court quoted *Aviex*, 125 Mich. App. at 590, 336 N.W.2d 838, in which that court wrote:

> It is merely fortuitous ... that the state has chosen to have plaintiff remedy the contamination problem, rather than choosing to incur the costs of clean-up itself and then suing plaintiff to recover those costs.

Moreover, as a federal district court has noted in *Avondale*, 697 F.Supp. at 1321 (S.D.N.Y.1988),

> the government has discretion in choosing responsive action in combatting pollution.... By choosing a more expensive option, the government can adversely affect the insured's rights.... Thus, the need to be represented is acute at the time the demand letter is received
>
> ....
>
> ... [and] is greatest before [a] remedial plan is formulated, when the government is accepting input from the responsible parties.

Further, as *Avondale* also noted, at 1319 a hypertechnical analysis of what constitutes a "suit" or "damages" is helpful only to lawyers.

> The average businessman does not differentiate between "damages" and "restitution"; in either case, money comes from his pocket and goes to third parties. *See United States Fidelity and Guaranty Co. v. Thomas Solvent Co.*, 683 F.Supp. at 1168 ("the insured ought to be able to rely on the common sense expectation that property damage within the meaning of the policy includes a claim which results in causing him to pay sums of money....."). The average businessman would consider himself covered for cleanup expenditures applicable to others' properties.

*American Motorists Insurance Co. v. Levelor Lorentzen, Inc.*, (D.N.J. October 14, 1988) (Westlaw No.1988 WL 112142 (D.N.J.)). This is especially so in Michigan, given *Aviex*, ₁25 Mich.App. 579, 336 N.W.2d 838, a 1983 case.

---

**7.** Moreover, as one federal trial judge has noted in an unpublished decision, the split of authority among the courts should have put insurers on notice that they might be obligated to defend environmental claims short of indemnification.

Finally, as Judge Enslen also noted in *Thomas Solvent*, 683 F.Supp. at 1173–74, money spent litigating duty to defend cases appears to require that insureds must seek insurance just to cover the cost of suing their own insurers; such monies would be better spent by one side or the other to clean up the environment instead.

For the reasons stated above, plaintiff's motion for partial summary judgment on the duty to defend issue is GRANTED and defendants' on the same issue is DENIED.[8] The parties are FURTHER ORDERED to submit, by means of a formal filing within 15 days of this writing, any name changes of the parties and motions that have been withdrawn in connection therewith.

SO ORDERED.

### ON MOTION TO ENFORCE JUDGMENT

The following was established at the December 5, 1989 hearing on plaintiff's Motion to Enforce Judgment:

(1) The parties shall submit to the court an agreed-upon question for certification to the Michigan Supreme Court. The question regarding the insurers' duty to defend shall be filed on or before December 15, 1989, and shall be submitted along with appropriate background information for the state Supreme Court.

(2) The parties shall submit to the court, by January 6, 1989 both disputed and undisputed defense costs to be paid plaintiff by defendants in accordance with this Court's judgment of August 8, 1989.

(3) Defendant's pending Motion for Reconsideration and plaintiff's response to it are hereby held in abeyance until the Michigan Supreme Court either accepts or rejects the proposed question for certification.

SO ORDERED.

---

8. It is obvious that the law should be settled by the Michigan Supreme Court. Interestingly, no one has suggested certification of the issue to that Court, and so we can look to more and more litigation with varying opinions, any one of which can ultimately be upheld.