**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

WHITNEY FORD; RODNEY FORD,
        *Plaintiffs-Appellants,*

        v.

LONG BEACH UNIFIED SCHOOL
DISTRICT,
        *Defendant-Appellee.*

No. 04-56263

D.C. No.
CV-04-02712-R

OPINION

Appeal from the United States District Court
for the Central District of California
Manuel L. Real, District Judge, Presiding

Submitted March 9, 2006*
Pasadena, California

Filed August 23, 2006

Before: Dorothy W. Nelson, Sidney R. Thomas, and
Richard C. Tallman, Circuit Judges.

Opinion by Judge D. W. Nelson

*This panel unanimously finds this case suitable for decision without
oral argument. *See* Fed. R. App. P. 34(a)(2).

## COUNSEL

Tania L. Whiteleather, Lakewood, California, for the appellants.

Adam J. Newman and Marlon C. Wadlington, Cerritos, California, for the appellee.

## OPINION

D.W. NELSON, Senior Circuit Judge:

Whitney Ford ("Whitney") and her father, Rodney Ford ("Rodney"), appeal the district court's order dismissing their request pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400-1487, for attorneys' fees related to legal services provided by Whitney's mother and Rodney's wife, Tania Whiteleather. We have jurisdiction under 28 U.S.C. § 1291 and must address an issue of first impression in this circuit: Is a parent performing legal services for her own child entitled to attorneys' fees pursuant to the IDEA? We hold that attorney-parents are not entitled to attorneys' fees for the representation their children in IDEA proceedings.[1]

---

[1]Because we conclude that the IDEA does not permit attorney-parents to recover attorneys' fees, we need not address whether the Fords are the "prevailing parties." Additionally, the Supreme Court has recently ruled that prevailing parents may not recover fees for "services rendered by experts in IDEA actions." *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 126 S. Ct. 2455, 2457 (2006). Thus, we need not consider the Fords' claims for expert fees.

# I

Whitney is a student in the Long Beach Unified School District (the "School District") suffering from a series of anxiety problems. Whitney also experiences difficulty remembering dates or facts and completing written and mathematics assignments. These problems have constantly and severely affected her performance in school. The instant case arises out of a series of disputes over Whitney's educational needs between Whitney, her father Rodney Ford, and her mother and attorney Tania L. Whiteleather on one side, and the School District on the other.

In 1999, Whitney was placed in a residential treatment center in Utah pursuant to an agreement with the School District regarding her Individualized Education Program ("IEP"). Sometime later, the treatment center suggested that Whitney return to her permanent residence in Southern California.

At an IEP meeting on May 31, 2000, the School District and the Fords agreed to return Whitney to her home. The IEP team also determined that Whitney would receive at-home academic instruction through the School District's "home/hospital" program, as well as services from Lindamood-Bell Learning Processes, an organization offering specialized educational instruction.

Before Whitney began her new program, the School District reversed course. On June 14, 2000, it decided that the agreed-upon services from Lindamood-Bell Learning Processes were unnecessary and determined that Whitney should be returned to the residential treatment center in Utah. The Fords objected, and Rodney filed a due process hearing request, on Whitney's behalf, with the California Special Education Hearing Office ("SEHO"). On August 24, 2000, the SEHO issued an order mandating the enforcement of the agreement reached between the Fords and the School District at Whitney's May 31, 2000, IEP meeting.

The School District challenged the SEHO's decision by filing a motion for a temporary restraining order in state court. The state court granted the School District's motion on November 7, 2000, and ordered that Whitney be returned to the residential treatment facility. The Fords appealed, and the parties reached a settlement agreement on April 17, 2001. That agreement nullified the November 7, 2000, state court order, provided that the School District would fund the services originally promised to Whitney at the May 31, 2000, IEP meeting, and reimbursed the Fords for various costs associated with Whitney's education.

In 2003, after the School District prevented Whitney from enrolling in a local high school, Rodney filed a second due process hearing request with the SEHO.[2] The parties eventually entered into a settlement agreement on August 18, 2003. This agreement provided that Whitney would be enrolled at a local high school and would receive math instruction from Lindamood-Bell Learning Processes. The School District also agreed to reimburse the Fords for prior visits to the residential placement center in Utah.

On April 29, 2004, Whitney and Rodney filed a complaint in the district court pursuant to the IDEA, seeking to recover fees related to their settlements with the School District. The School District filed a motion to dismiss for failure to state a claim, and on June 28, 2004, the district court dismissed the complaint. This timely appeal followed.

## II

We review de novo a district court's dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure

---

[2]In order to accommodate the schedule of the School District's counsel, the matter was dismissed without prejudice via an agreement reached on January 5, 2003. Rodney subsequently filed a third due process hearing request.

12(b)(6). *See Decker v. Advantage Fund, Ltd.*, 362 F.3d 593, 595-96 (9th Cir. 2004). Therefore, we must ask whether, "assuming all facts and inferences in favor of the nonmoving party, it appears beyond doubt that [Whitney and Rodney] can prove no set of facts to support [their] claims." *Libas Ltd. v. Carillo*, 329 F.3d 1128, 1130 (9th Cir. 2003).

### III

[1] Before reaching the central issue in this case—whether the IDEA authorizes attorneys' fees—we address briefly the School District's argument that the Fords' claim should be dismissed for failure to abide by the claim presentment requirement of the California Tort Claims Act.[3] That law poses no obstacle to the Fords' claim for attorneys' fees because—as we have already explained—state claim presentment requirements cannot be applied to federal civil rights actions. *See Stanley v. Trustees of the Cal. State Univ.*, 433 F.3d 1129, 1135 (9th Cir. 2006); *see also Felder v. Casey*, 487 U.S. 131, 140 (1988) (reasoning that "the absence of any notice-of-claim provision is not a deficiency requiring the importation of such statutes into the federal civil rights scheme").

### IV

Next, we must determine whether the IDEA authorizes attorneys' fees for attorney-parents.[4] We join three other circuits in concluding that it does not. *See S.N. ex rel. J.N. v. Pittsford Cent. Sch. Dist.*, 448 F.3d 601 (2nd Cir. 2006);

---

[3]The relevant provision provides that "no suit for money or damages may be brought against a [local] public entity . . . until a written claim therefor has been presented to the public entity. . . ." Cal. Gov't Code § 945.4.

[4]The Fords also argue that they are entitled to attorneys' fees pursuant to 42 U.S.C. § 1988, but that statute does not provide for fees related to a successful IDEA claim. *See* 42 U.S.C. § 1988.

*Woodside v. Sch. Dist. of Phila. Bd. Of Educ.*, 248 F.3d 129 (3rd Cir. 2001); *Doe v. Bd. of Educ. of Balt. County*, 165 F.3d 260 (4th Cir. 1998).

## A

**[2]** In interpreting the IDEA, like any other statute, we turn first to its plain meaning. *United States v. Stewart*, 420 F.3d 1007, 1020 (9th Cir. 2005). The version of the IDEA applicable at the time of the district court's decision states that "[i]n any action or proceeding brought under this subsection, the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents or guardian of a child or youth with a disability who is the prevailing party." 20 U.S.C. § 1415 (e)(4)(B) (2004).[5] Whiteleather is an attorney, so applying the plain meaning of the provision, the Fords appear to be entitled to fees. However, the established interpretation of language similar to that used in § 1415 strongly suggests that the Fords are not entitled to attorneys' fees.

**[3]** In particular, we focus on 42 U.S.C. § 1988,[6] a fee-shifting provision "virtually identical" to that before us. *See Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 126 S. Ct. 2455, 2462 (2006). In *Kay v. Ehrler*, 499 U.S. 432 (1991), the Supreme Court determined that the "overriding statutory concern" of § 1988 was to ensure that victims of civil rights violations benefit from "the judgment of an *independent* third

---

[5]Although the IDEA was amended in 2004, *see* Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, 118 Stat. 2647, the amended attorneys' fees provision is identical to the version of the IDEA applicable at the time of the district court's decision. *Compare* 20 U.S.C. § 1415(e)(4)(B) (2004), *with* 20 U.S.C. § 1415(i)(3) (B)(i) (2005) ("In any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs . . . to a prevailing party who is the parent of a child with a disability. . . .").

[6]Section 1988 provides that "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee." 42 U.S.C. § 1988(b).

party [to] mak[e] sure that reason, rather than emotion, dictates the proper tactical response to unforeseen developments in the courtroom." *Kay*, 499 U.S. at 437 (emphasis added).[7] Consequently, the Supreme Court concluded that an attorney appearing *pro se* was not entitled to fees under § 1988.

**[4]** We can discern no reason—either in the "intention of Congress . . . [or] in the purpose, history and overall design or context of the statute," *Perez-Arellano v. Smith*, 279 F.3d 791, 794 (9th Cir. 2002)—to interpret the IDEA inconsistently with § 1988. *See Doe*, 165 F.3d at 264 (noting that "the legislative history indicates that Congress intended courts to interpret [the IDEA] as they have § 1988 and Title VII"); *see also Northcross v. Bd. of Ed. of Memphis City Sch.*, 412 U.S. 427, 428 (1973) (stating that similar language in different statutes is a "strong indication" that the statutes are to be interpreted similarly).

**[5]** Like an attorney appearing *pro se*, a disabled child represented by his or her parent does not benefit from the judgment of an independent third party. Indeed, "the danger of inadequate representation is as great when an emotionally charged parent represents his minor child as when the parent represents himself." *Woodside*, 248 F.3d at 131 (citation omitted); *see also Doe*, 165 F.3d at 263 ("[A]ttorney-parents are generally incapable of exercising sufficient independent judgment on behalf of their children to ensure that 'reason, rather than emotion' will dictate the conduct of the litigation.") (citation omitted). Therefore, we agree with our sister circuits that

---

[7]The Supreme Court also focused on the word attorney, which assumes an agency relationship. *Kay*, 499 U.S. at 435-36. Although an attorney-parent acts on behalf of her child, we recognize that the relationship cannot be analogized readily to typical agency relationships. *See* RESTATEMENT (THIRD) OF AGENCY § 1.01 cmt. c (noting standard examples: "employer and employee, corporation and officer, client and lawyer, and partnership and general partner"); *id.* cmt. d (emphasizing that "agency is a consensual relationship . . . . requir[ing] that an agent-to-be and a principal-to-be consent to their association with each other").

"the better rule is one which encourages parents to seek independent, emotionally detached counsel for their children's IDEA actions." *Woodside*, 248 F.3d at 131; *see also J.N. v. Pittsford Cent. Sch. Dist.*, 448 F.3d at 604; *Doe*, 165 F.3d at 263. Accordingly, the Fords are not entitled to attorneys' fees because Whiteleather, Whitney's legal counsel, is also Whitney's mother.

We recognize that, on some occasions, attorney-parents will provide independent, reasoned representation to their children. Given the underlying results, we can only conclude that Whiteleather "obviously handled h[er] professional responsibilities in this case in a competent manner." *Kay*, 499 U.S. at 435. Nevertheless, we are convinced that our rule— which presumes irrefutably that parents and guardians are *always* unable to provide independent, dispassionate legal advice—will better serve Congress' intentions.

**[6]** Just as in *Kay*, awarding attorneys' fees to the Fords would create a disincentive to employ counsel whenever a parent or guardian considered herself competent to litigate on behalf of her child. *See Kay*, 499 U.S. at 438. "The statutory policy of furthering the successful prosecution of meritorious claims is better served by a rule that creates an incentive to retain [independent] counsel in every such case." *Id.*

## V

For the foregoing reasons, the district court's dismissal of this case is

**AFFIRMED**.