NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0319n.06

Case No. 21-1439

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Aug 03, 2022
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| TRIDENT FASTENERS, INC., | ) | |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN |
| SELECTIVE INSURANCE COMPANY OF SOUTH CAROLINA, | ) ) ) | |
| Defendant-Appellee. | ) ) | OPINION |

Before: BATCHELDER, WHITE, and BUSH, Circuit Judges.

BUSH, J., delivered the opinion of the court in which BATCHELDER, J., joined. WHITE, J. (pp. 14–15), delivered a separate concurring opinion.

JOHN K. BUSH, Circuit Judge. Trident Fasteners, Inc. (TFI) is an automotive supplier in Grand Rapids, Michigan, that makes customized screws, bolts, and other fasteners for use as component parts. Automotive fasteners have a variety of uses. They can prevent leakage, distribute pressure, and hold vehicles together. But, when such fasteners do not work, things can fall apart. That is what happened to TFI's relationship with its insurer, Selective Insurance Co. of South Carolina (Selective).

When a customer threatened litigation over defective fasteners, TFI settled with that customer rather than wait for the court complaint. The issue before us is whether Selective had an obligation to pay for the settlement without a lawsuit having been filed against TFI. We hold that

no such obligation arose, so we affirm the district court's grant to Selective of judgment on the pleadings.

I.

In December 2017, Selective issued an insurance policy package (Policy), No. S 2198083, to TFI. The Policy contained commercial general liability coverage and commercial umbrella coverage, effective January 1, 2018 to January 1, 2019. Specifically, Selective agreed to "pay those sums that the insured[, TFI] becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage[.]'" Ans. Ex. 1, R. 10-1, PageID 276. The Policy stated that Selective has "the right and duty to defend the [TFI] against any 'suit' seeking those damages"[1] and it "may, at [its] discretion, investigate any 'occurrence' and settle any claim or 'suit' that may result." *Id.* Also relevant here, the Policy contained "voluntary payment" and "no action" provisions:

> 2. Duties In The Event Of Occurrence, Offense, Claim or Suit
> [ . . . ]
> d. No insured will, except at the insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.
>
> 3. Legal Action Against Us
>
> No person or organization has a right under this Coverage Part:
>
> a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or
>
> b. To sue us on this Coverage Part unless all of its terms have been fully complied with.
>
> A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a

---

[1] The Policy defines "suit" as "a civil proceeding in which damages because of 'bodily injury,' 'property damage' or 'personal and advertising injury' to which this insurance applies are alleged." *Id.* at 291. "Suit" also includes an "arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with [Selective's] consent" and any "other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with [Selective's] consent." *Id.*

> settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

*Id.* at 286.

In October 2018, TFI reached out to Selective for coverage related to an alleged product defect, which Selective labeled Claim No. 21923029 (Insurance Claim). The Insurance Claim stemmed from a chain of events that had started four months earlier in June 2018, when TFI's customer, Tenneco, along with MCS, a parts manufacturer, complained to TFI that they had received defective fasteners. The fasteners were installed into top mounts by MCS, pressed with a foam jounce bumper by Tenneco, and installed into truck struts by General Motors Co. TFI alleges that Elm Plating Co., the supplier that applies heat treatment to the metal fasteners, failed to properly heat treat the fasteners, resulting in bent or broken products. This alleged defect led to a recall of the fasteners and products that used the fasteners. In August 2018, Tenneco contacted TFI again, reporting that it received more defective fasteners. This led to another recall. Two months later, in October, Tenneco demanded that TFI reimburse it for General Motors Co.'s back charges and for its own costs and expenses. That demand resulted in TFI's Insurance Claim to Selective.

After several months of not hearing from Selective on whether it would provide coverage, TFI reached out again in February 2019, to inquire about Selective's potential participation in a resolution with Tenneco. Selective responded by assigning a new adjuster to the Insurance Claim on February 26, 2019. But TFI heard nothing else, so it contacted Selective again in April 2019. Selective then responded with a request for additional information before it would consent to TFI entering into settlement negotiations with Tenneco to resolve the issue.

On May 10, 2019, Selective denied consent for TFI to send a settlement letter and instructed it to not engage in any settlement negotiations with Tenneco. But TFI did not heed

those instructions and, on June 28, 2019, it settled the dispute with Tenneco. Appellant's Br. at 8 n.1.

The parties disagree over when Selective sent TFI a reservation-of-rights letter and offered to defend TFI against Tenneco. Selective contends that it issued the letter on June 25, 2019, and, in its corrected complaint and reply brief, TFI stated that it received this letter on that day. Corrected Compl., R. 5, PageID 16; Reply Br. at 7. But TFI also stated that it received the notice on the afternoon of June 28, 2019, after it had settled with Tenneco. Pl.'s Resp., R. 49, PageID 668 n.1; Appellant's Br. at 16 n.1. Regardless, Selective denied coverage under the Policy and refused to pay the Insurance Claim, stating that TFI breached the Policy by voluntarily paying Tenneco.

TFI then filed a lawsuit against Selective, alleging for the first time that Selective materially breached the Policy, as defined under Michigan law, by acting in bad faith. TFI claimed that Selective unreasonably delayed its investigations and communications with it, refused to participate in resolution of the Insurance Claim, unreasonably withheld consent to participate in settlement negotiations, unreasonably delayed sending a reservation-of-rights letter and providing defense, and refused to pay the Insurance Claim in violation of Michigan law. TFI sought damages in excess of $1.3 million and declaratory relief. Selective answered and counterclaimed that it was not obligated to pay for TFI's settlement with Tenneco because TFI did not obtain Selective's consent. Selective then moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), stating that (1) TFI violated the voluntary-payment and no-action clauses in the Policy by settling the underlying Insurance Claim and (2) the Insurance Claim is not for sums that TFI became "legally obligated to pay as damages."

The district court granted the motion. It first noted that similar "voluntary payment" and "no action" clauses have been upheld and enforced under Michigan law. It then stated that these provisions would only have been waived if Selective denied liability and refused to defend an action against TFI. "Since Tenneco never filed suit against T[FI]," the court reasoned, "Selective cannot be liable for T[FI]'s settlement payment."

The court also rejected TFI's argument that it was not bound by the voluntary-payment and no-action clauses because Selective breached the contract first by acting in bad faith. The court relied upon Michigan law establishing that the duty of good faith in defending an insured, investigating a claim, and participating in settlement negotiations arises only after a lawsuit is filed against the insured. Finding no prior material breach by Selective, the court held that the Policy still controlled and TFI's voluntary payment to Tenneco absolved Selective of any obligation to reimburse. TFI's timely appeal to us followed.

## II.

We review a district court's grant of judgment on the pleadings under Federal Rule of Civil Procedure 12(c) de novo. *Jackson v. City of Cleveland*, 925 F.3d 793, 806 (6th Cir. 2019). Our review takes "all well-pleaded material allegations of the pleadings of the opposing party[, TFI,] . . . as true," and we will uphold the judgment only if "'the moving party[, Selective,] is nevertheless clearly entitled to judgment' as a matter of law." *Hindel v. Husted*, 875 F.3d 344, 346–47 (6th Cir. 2017) (quoting *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581–82 (6th Cir. 2007) (citation omitted)).

TFI does not dispute that it was a party to the Policy and that the exclusionary clauses— the "voluntary payment" and "no action" provisions—were valid. *See F.P. Dev., LLC v. Charter Twp. of Canton* 16 F.4th 198, 203 (6th Cir. 2021) (stating that arguments not raised on appeal are

forfeited); *see also Coil Anodizers, Inc. v. Wolverine Ins. Co.*, 327 N.W.2d 416, 417–18 (Mich. Ct. App. 1982) (precluding liability under a similar "voluntary payment" and "no action" provision); *Giffels v. Home Ins. Co.*, 172 N.W.2d 540, 543–44 (Mich. Ct. App. 1969) (same). But it argues that its Insurance Claim is not precluded by the Policy because Selective materially breached the Policy first by acting in bad faith.[2]

Michigan courts have recognized the duty to act in good faith as an implied contractual obligation in certain circumstances. *See Hart v. Ludwig*, 79 N.W.2d 895, 898 (Mich. 1956); *but see Dahlman v. Oakland Univ.*, 432 N.W.2d 304, 306 (Mich. Ct. App. 1988) (rejecting the recognition of an independent claim for a breach of an implied covenant of good faith). The duty of good faith can arise in the insurance context for limited purposes, including the investigation and payment of claims, *see Murphy v. Cincinnati Ins. Co.*, 772 F.2d 273, 276–77 (6th Cir. 1985) (applying Michigan law to a first-party insurance claim); processing of claims, *see Wendt v. Auto Owners Insurance Co.*, 401 N.W.2d 375, 379 (Mich. Ct. App. 1986); and settlements, *see Commercial Union Insurance Co. v. Liberty Mutual Insurance Co.*, 393 N.W.2d 161, 162 (Mich. 1986). A breach of the duty of good faith, otherwise known as bad faith, "is a breach of the contract itself." *See Santos v. Farmers Ins. Exch.*, No. 07-11229, 2008 WL 506351, at *6 (E.D. Mich. Feb. 22, 2008) (citing *Shapiro v. Patrons Mut. Fire Ins. Co. of Mich.*, 189 N.W. 202, 203–04 (Mich.1922)).

TFI identifies three duties Selective allegedly breached—the duty to investigate insurance claims, the duty to process insurance claims, and the duty to negotiate settlements. We will address

---

[2] TFI does not argue on appeal that Selective's actions constitute waiver of conditions in the Policy, and for good reason, as this argument would have failed. *See Cadle Co. v. Kentwood*, 776 N.W.2d 145 (Mich. Ct. App. 2009) ("The party asserting the waiver bears the burden of proof."); *see also Moore v. First Security Cas. Co.*, 568 N.W.2d 145 (Mich. Ct. App. 1997) (Waiver requires the "intentional[] and voluntar[y] relinquish[ment of] a known right.").

each alleged duty in turn to determine if a triable issue exists of whether Selective acted in bad faith.

A.  Duty to Investigate

The duty to investigate an insurance claim involving a third party falls under the duty to defend.  *Koski v. Allstate Ins. Co.*, 572 N.W.2d 636, 639 n.5 (Mich. 1998) ("An insured's duty to defend, then, includes the duty to investigate[.]"); *see also Frankenmuth Mut. Ins. Co. v. Keeley*, 447 N.W.2d 691, 697 (Mich. 1989), on reh'g, 462 N.W.2d 750 (Mich. 1990), and on reh'g, 461 N.W.2d 666 (Mich. 1990) (discussing the difference between bad-faith failure to defend and failure to settle cases involving third parties).  The alleged good or bad faith of the insurer, however, is irrelevant to whether the duty to defend arises.  *See Stockdale v. Jamison*, 330 N.W.2d 389, 392 (Mich. 1982) ("The duty to defend . . . arises solely from the language of the insurance contract.  A breach of that duty can be determined objectively, without reference to the good or bad faith of the insurer.  If the insurer had an obligation to defend and failed to fulfill that obligation, then, like any other party who fails to perform its contractual obligations, it becomes liable for all foreseeable damages flowing from the breach.").

Michigan courts state that "the duty of the insurer to defend the insured depends upon the allegations in the complaint of the third party in his or her action against the insured."  *Dochod v. Cent. Mut. Ins. Co.*, 264 N.W.2d 122, 123 (Mich. Ct. App. 1978) (citing *Guerdon Indus., Inc. v. Fidelity & Casualty Co. of N.Y.*, 123 N.W.2d 143, 147 (Mich. 1963)) (referring to a lawsuit as an "action"); *see also Koski*, 572 N.W.2d at 639 n.5 (explaining that this duty to investigate arises because the insurer needs to "analyze whether the third party's claim [in its lawsuit] against the insured should be covered[,]" in order to determine if it will defend).  In other words, an insurer's duty to defend, and thus the duty to investigate, does not arise unless and until a third party files a

lawsuit against the insured. Michigan courts also have found that demand letters from regulators, specifically in the context of environmental regulations, can be considered "the functional equivalent of a suit brought in the court of law." *Mich. Millers Mu. Ins. Co. v. Bronson Plating Co.*, 519 N.W.2d 864, 870 (Mich. 1994), *overruled on other grounds by Wilkie v. Auto-Owners Ins. Co.*, 664 N.W.2d 776, 778 (Mich. 2003).[3] Here, no such complaint or agency demand letter against the insured existed to trigger the duty to defend and consequently the duty to investigate.

   B.  Duty to Process the Insurance Claim

The absence of a lawsuit against the insured also resolves whether the duty to process the Insurance Claim in good faith arose. Michigan courts have viewed this duty as part of an insurer's duty to pay the insured in a timely fashion. *See, e.g., Pollock v. Fire Ins. Exch.*, 423 N.W.2d 234, 237 (1988). Here, it is not clear what TFI means by the "duty to process claims." It states that Selective had a duty to "take a position with respect to coverage within a reasonable time," and that the insurer "delayed investigation of the [Insurance] Claim." Appellant's Br. at 26; *see also* Reply Br. at 12 ("Processing the [insurance] claim necessarily involves investigating the merits of

---

[3] TFI misreads *Higgins Industries, Inc. v. Fireman's Fund Insurance Co.*, 730 F. Supp. 774 (E.D. Mich. 1989), to argue that a lawsuit against it was not needed to trigger Selective's duty to defend and investigate. In *Higgins Industries*, the insured received a Notice of Noncompliance from the Michigan Department of Natural Resources (MDNR) regarding the level of contaminants it released into wastewater. *Id.* at 775. The insured reached out to its insurers, who refused to pay because they contended that the duty to defend attaches only at the commencement of a "formal, traditional lawsuit." *Id.* The district court held the MDNR's Notice of Noncompliance as the functional equivalent of a court complaint. *Id.* at 777.

All the cases cited by the *Higgins Industries* court for its holding involved the filing of a court complaint or an MDNR Notice against the insured. *See Jonesville Prod., Inc. v. Transamerica Ins. Grp.*, 402 N.W.2d 46, 48 (Mich. Ct. App. 1986) (lawsuit filed by third party against plaintiffs regarding soil contamination); *U.S. Aviex Co. v. Travelers Ins. Co.*, 336 N.W.2d 838, 841 (Mich. Ct. App. 1983) (demand letter from MDNR about contamination levels in soil). And, indeed, no Michigan court has embraced attaching the duty to defend in the absence of a court complaint or its functional equivalent in an administrative proceeding. TFI asks us to make a poor *Erie* guess in expanding the duty to defend (and likewise the duty to investigate) to pre-lawsuit anticipatory demands. *See Erie R.R. v. Tompkins*, 304 U.S. 64 (1938). This does not comport with our duties when faced with a question of state law. *Grantham & Mann, Inc. v. Am. Safety Prods., Inc.*, 831 F.2d 596, 608 (6th Cir. 1987) ("If the forum state's highest court has not addressed the issue, the federal court must ascertain . . . what the state's highest court would decide if faced with the issue.").

the claim and taking a position[.]"). Those assertions could mean two different things, but neither argument succeeds. If TFI is arguing that Selective acted in bad faith in the investigation stage of processing its Insurance Claim, this argument would fall within TFI's argument, already addressed above, concerning Selective's duty to investigate and defend. Alternatively, if TFI is arguing that Selective delayed in stating its intent to defend, this argument would also fall under the duty to defend. But, regardless, the duty of good faith requires the filing of a lawsuit.

Relatedly, TFI also proffers that it was prejudiced because of the "unreasonably late" nature of Selective's reservation-of-rights letter. Appellant's Br. at 27. In support, TFI primarily relies upon *Kirschner v. Process Design Associates, Inc.*, 592 N.W.2d 707 (Mich. 1999), and *Meirthew v. Last*, 135 N.W.2d 353 (Mich. 1965). But both cases are inapposite here.

In *Kirschner*, the insurer provided a notice of its reservation of rights within one month of receipt of the insured's *amended complaint* in a lawsuit. 592 N.W.2d at 711. The Michigan Supreme Court considered the dispositive timeframe to be only the time between the receipt of a *complaint* in a lawsuit and notice of the reservation of rights. *See also Alyas v. Gillard*, 446 N.W.2d 610, 613 (Mich. Ct. App. 1989) ("The insurance carrier will not be permitted to benefit by sitting idly by, *knowing of the litigation*, and watching its insured become prejudiced." (emphasis added) (citing *Burgess v. Am. Fidelity Fire Ins. Co.*, 310 N.W.2d 23 (Mich. Ct. App. 1981))).

*Meirthew* is likewise unpersuasive. There, the Michigan Supreme Court held that an insurer was estopped from denying liability when it took control over the insured's defense in a lawsuit *after* the complaint had been filed, continued control over the defense through the rendition of judgment against the insured, and did not tell the insured until after that it did not consider itself liable under the policy. 135 N.W.2d at 354–56.

In both *Kirschner* and *Meirthew*, a complaint had been filed before any issue arose that related to the insurer's duties. Those cases confirm that without a complaint filed against it, TFI has no claim based on a violation of the duty to process insurance claims.

C. Duty to Negotiate Settlements

The duty to negotiate settlements likewise requires a lawsuit before a duty to act in good faith arises. The Michigan Supreme Court has stated that "[w]hen a liability insurer has sole power and control over the *litigation of claims brought*, against its insured, which includes the *obligation to compromise the claim* if feasible, then counsel must proceed in good faith." *Frankenmuth Mut. Ins. Co.*, 461 N.W.2d at 666 (emphasis added) (referring to claims brought forth in lawsuits as "claims"); *see also Valentine v. Liberty Mut. Ins. Co.*, 620 F.2d 583, 585 (6th Cir. 1980) ("[T]he law of Michigan requires a showing of 'bad faith' on the part of an insurance company before liability in excess of the carrier's obligations under the policy can be imposed.").

III.

Having concluded that Michigan courts require the filing of a lawsuit against the insured or an agency demand letter to the insured that is the functional equivalent of a complaint, we now address whether any such complaint or agency demand letter was made against TFI. There was not. The third party in this case, Tenneco, never initiated litigation proceedings, and, as a private entity, it could not issue any agency demand. So, with no complaint or agency demand, there was nothing to prompt Selective's duty to investigate, settle, or otherwise process a claim. Thus, Selective could not have breached the Policy first by failing to fulfill its duties in good faith.

Our holding is confirmed by Michigan public policy. Michigan courts have held that "[a]n insurer is free to define or limit the scope of coverage as long as the policy language fairly leads to only one reasonable interpretation and is not in contravention of public policy." *Farm Bureau*

*Mut. Ins. Co. v. Nikkel*, 596 N.W.2d 915, 920 (Mich. Ct. App. 1999) (quoting *Heniser v. Frankenmuth Mut. Ins. Co.*, 534 N.W.2d 502, 505 (Mich. Ct. App. 1995)). And the Michigan Supreme Court has stated that "[p]ublic policy is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." *Terrien v. Zwit*, 648 N.W.2d 602, 609 (Mich. Ct. App. 2002).

A statute that TFI cites—Mich. Comp. Laws § 500.2006(1)—does not support its position. In fact, that law provides *support* for reading the filing of a lawsuit as a threshold requirement for the duty of good faith:

> A person must pay on a timely basis to its insured, an individual or entity directly entitled to benefits under its insured's contract of insurance, or a third party tort claimant the benefits provided under the terms of its policy, or, in the alternative, the person must pay to its insured, an individual or entity directly entitled to benefits under its insured's contract of insurance, or a third party tort claimant 12% interest, as provided in subsection (4), on claims not paid on a timely basis. Failure to pay claims on a timely basis or to pay interest on claims as provided in subsection (4) is an unfair trade practice *unless the claim is reasonably in dispute*.

Mich. Comp. Laws § 500.2006(1) (emphasis added). Sections 500.2006(1) and 500.2006(4), which TFI also cites, require the insured to show "satisfactory proof of loss," that "liability of the insurer for the claim [is] not reasonably in dispute," "the insurer refused payment of the claim," and "that refusal to pay was in bad faith." Mich. Comp. Laws §§ 500.2006(1), (4); *see also Medley v. Canady*, 337 N.W.2d 909, 911 (Mich. Ct. App. 1983). This "claim" must be "more than just a notice of accident and injury; it contemplates a demand for relief as well." *Id.* (citing *Avril v. United States*, 461 F.3d 1090, 1091 (6th Cir. 1972)). A lawsuit would satisfy this element. *Id.* The Michigan Court of Appeals explained: "If the statute is to meet its purpose of encouraging prompt payment of claims, 'claim' must be interpreted to include a complaint against an insured of which the insurer received notice." *Id.* The statute makes the filing of a lawsuit a predicate requirement.

This threshold is not illogical when applied to the duty of good faith, despite TFI's contentions to the contrary. Appellant's Br. at 32–33 ("Requiring an insured to provide timely notice to an insurance company to give it the opportunity to investigate *in the event* a lawsuit is later filed necessarily implies the insurance company has a duty to investigate a[n insurance] claim prior to a suit."). As the Michigan Supreme Court explained: "The purpose of giving notice as soon as practicable after the occurrence of an accident is to give the insurer an opportunity to investigate the facts and circumstances affecting the question of liability and the extent of such liability." *Wehner v. Foster*, 49 N.W.2d 87, 90 (Mich. 1951). An insured cannot withhold information and then force an insurer to pay out an insurance claim. The reverse would not be true, as TFI already had the facts and opportunity to investigate its insurance claim itself. TFI obtained insurance coverage from Selective to, as relevant here, hedge its litigation risk from third parties. As this risk never materialized, Selective did not owe TFI a good-faith duty and could not have breached the Policy in the absence of actual litigation filed against TFI.

IV.

We have concluded that Selective had no implied duty of good faith that arose prior to the filing of a complaint. That conclusion makes resolution of this appeal straightforward based on the text of the Policy. As the parties do not contest, the Policy's plain language is unambiguous, so we apply it here. *Rory v. Continental Ins. Co.*, 703 N.W.2d 23, 29 (Mich. 2005). The Policy states that TFI will not "voluntarily make a payment . . . without [Selective's] consent," and it will not sue Selective "unless all of [the Policy's] terms have been fully complied with." Ans. Ex. 1, R. 10-1, PageID 286. TFI stipulated that it did not receive consent before settling with Tenneco. Appellant's Br. at 12. Because TFI settled without consent and voluntarily paid Tenneco, it breached the Policy. TFI's Insurance Claim is precluded.

V.

Because Selective's duty of good faith under Michigan law would not arise until after the filing of a lawsuit against TFI, and given that there was no such lawsuit ever filed, the Insurance Claim is precluded under the Policy. We therefore affirm the district court's grant to Selective of judgment on the pleadings.

HELENE N. WHITE, Circuit Judge, concurring.  Because the Michigan courts have not definitively held in a published case that there are no circumstances under which an insurer's duties to investigate a claim and negotiate a settlement in good faith can arise before the filing of a third-party lawsuit or notice of an administrative charge, I would not decide this case on that ground. I concur in the judgment, however, because I agree that the Michigan courts would conclude that TFI failed to adequately plead that Selective is liable under the Policy, or that it acted in bad faith.

As an initial matter, the parties contractually circumscribed Selective's duty to defend.  The Policy states that Selective "will have the right and duty to defend [TFI] against any 'suit' seeking [damages for '"bodily injury" or "property damage" to which this insurance applies']."  R. 10-1, PID 276.  The Policy defines "suit" as "a civil proceeding in which damages because of 'bodily injury,' 'property damage' or 'personal and advertising injury' to which this insurance applies are alleged"; "[a]n arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent"; or "[a]ny other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent." *Id.* at PID 291.  Unlike in *Michigan Millers Mutual Insurance Co. v. Bronson Plating Co.*, 519 N.W.2d 864 (Mich. 1994),[1] where it was ambiguous whether the term "suit"—which was not defined in the insurance policies at issue—encompassed a "potentially responsible party" letter from the United States Environmental Protection Agency, *id.* at 868, 870, the term "suit" in TFI's insurance policy cannot be fairly read to apply to Tenneco's reimbursement request.

Additionally, the factual allegations in the complaint do not support that Selective acted in bad faith.  TFI submitted Tenneco's claims to Selective in October 2018 and requested coverage

---

[1] *Michigan Millers* was overruled in part on other grounds by *Wilkie v. Auto-Owners Insurance Co.*, 664 N.W.2d 776 (Mich. 2003).

under the Policy. After receiving no response, TFI contacted Selective again in February 2019 to request Selective's coverage position and seek its participation in a resolution with Tenneco. That same month, Selective assigned a new adjuster to the insurance claim and provided the adjuster with information regarding Tenneco's claims. In April 2019, TFI again requested Selective's coverage position and sought its consent to send a settlement letter to Tenneco to resolve the matter for less than Tenneco's asserted damages. Selective requested additional information from TFI "before it would give its consent," and TFI provided the requested information on April 25, 2019. R. 5, PID 16. About two weeks later, on May 10, 2019, Selective denied consent for TFI to send a settlement letter to Tenneco and directed TFI not to engage in settlement negotiations. The next month, Selective sent TFI a reservation-of-rights letter, offering to defend TFI. These allegations do not support either a claim for breach of the insurance contract or a claim of bad faith. *See Com. Union Ins. Co. v. Liberty Mut. Ins. Co.*, 393 N.W.2d 161, 165–66 (Mich. 1986) (listing factors that the Michigan courts consider when assessing whether an insurer failed to negotiate a settlement in good faith).

Accordingly, the Policy's unambiguous terms apply. Under the Policy, TFI could not "voluntarily make a payment, assume any obligation, or incur any expense . . . without [Selective's] consent." R. 10-1, PID 286. Nor could TFI "sue [Selective] on [the relevant] Coverage Part unless all of its terms ha[d] been fully complied with." *Id.* Because TFI settled its dispute without Selective's consent, it did not comply with the Policy's "voluntary-payment" provision, and Selective cannot be held liable.